**Shawn M. FLYNN, Plaintiff,**

v.

**RAYTHEON COMPANY, Defendant.**

**Civ. A. No. 93–12144–WGY.**

United States District Court,
D. Massachusetts.

Nov. 10, 1994.

384

Laurence E. Sweeney, Chelmsford, MA, for plaintiff.

David C. Casey, Peckham, Lobel, Casey, Prince & Tye, Boston, MA, for defendant.

---

1. The ADA enlarges the scope of the Rehabilitation Act of 1973 by extending remedies for handicap discrimination against private employers. *See Ellenwood v. Exxon Shipping Co.,* 984 F.2d 1270, 1277 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2987, 125 L.Ed.2d 682 (1993).

2. On this motion to dismiss, the Court must interpret the relevant facts of record in the light

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

This motion to dismiss presents a single issue of first impression in this Circuit, viz., may an employer, consistent with its duty under federal law to make "reasonable accommodation" to the known physical disability of its employees, summarily fire an employee known to be suffering from alcoholism the very first time he shows up for work under the influence? Under the applicable statutory mandate, the answer is "yes," so long as the termination itself was not discriminatory.

## I.  BACKGROUND

■ The plaintiff, Shawn M. Flynn ("Flynn"), has brought this action against his employer Raytheon Company ("Raytheon") alleging that Raytheon willfully discriminated against him on the basis of his disability, alcoholism, in violation of Title I of The Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12111–12117 (West Supp.1993).[1] According to Flynn,[2] Raytheon hired him as a solderer on July 11, 1983. In September, 1984, Flynn assumed a new position as a custodian for Raytheon, a position he held until Raytheon terminated him nine years later for violating company rules. Raytheon's Rules and Regulations expressly prohibit,

> Reporting to work or working under the influence of alcohol [or] . . . drugs or narcotics.

*See* Raytheon Rules and Regulations # 16, 18 attached to Plaintiff's Complaint at Exhibit 3. A violation of any of Raytheon's rules may result in disciplinary action up to and including discharge. *Id.* By his own admission, Flynn violated these rules on September 17, 1992 by arriving at his work site intoxicated. Upon realizing Flynn's condition, his supervi-

most favorable to the plaintiff, Flynn. "In the precincts patrolled by Rule 12(b)(6), the demands on the pleader are minimal. . . . [T]he court must 'accept the well-pleaded factual averments of the . . . complaint as true, and construe these facts in the light most flattering to the [plaintiff's] cause. . . .'" *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988) (citation omitted).

sor immediately sent him home. Disciplinary action was taken against Flynn for violating the company's policy against on the job intoxication, and Flynn was terminated. Although Flynn's alcoholism was known to Raytheon, he had never before imbibed alcohol on the job—the incident on September 17, 1992, was the first and only one of its kind. Despite the fact that Flynn has subsequently completed treatment for alcoholism on his own initiative, Raytheon has refused to reinstate Flynn or change his termination to a suspension.[3]

Flynn filed a grievance with his union to dispute the termination. When that proved unsuccessful, Flynn filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On July 9, 1993, Flynn received a "right to sue" letter pursuant to 42 U.S.C. § 2000e–5(f)(1), giving him the right to file a complaint within 90 days in the United States District Court. Flynn has done so, specifically alleging that Raytheon violated 42 U.S.C. § 12112(b)(5)(A) by failing to accommodate his disability.[4]

Flynn also pleads a second count under 42 U.S.C. § 2000e–5, as amended by 42 U.S.C. § 1981(a), which claims damages available under the Civil Rights Act of 1968. This second count is, however, entirely dependent on the ADA count and rises or falls with it.

Raytheon now moves to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), asserting that Flynn has not stated a claim upon which relief can be granted under the ADA. Raytheon argues that the ADA expressly permits an employer to terminate an employee who reports to work under the influence of alcohol and that this should operate as an absolute defense in this case. See 42 U.S.C. § 12114(c)(2).[5]

## II. ANALYSIS

█ Flynn asserts correctly that, as an alcoholic, he is a disabled individual under the Americans with Disabilities Act. Schmidt v. Safeway Inc., 864 F.Supp. 991, 996 (D.Or.1994) ("[a]lcoholism is a disability covered by the ADA"). See also Cook v. Rhode Island Dept. of Mental Health, Retardation, and Hospitals, 10 F.3d 17, 24 (1st Cir.1993) ("the [Rehabilitation] Act indisputably applies to numerous conditions that may be caused or exacerbated by voluntary conduct, such as alcoholism").[6] Flynn thus states that at all times material to the complaint, he was a "qualified individual with a disability," as defined by 42 U.S.C. § 12111, because he was an alcoholic who, with reasonable accommodation, could perform the essential functions of his job. He alleges that Raytheon failed to make reasonable accommodations for his alcoholism in violation of § 12112(b)(5)(A), insofar as the company failed to give him an opportunity to seek treatment for his drinking problem and thereby correct his behavior, and it failed to reinstate him once he had received treatment. Flynn additionally alleges that he was fired because of his alcoholism while others who violated the same rules were retained,

---

3. There are references in the complaint to two prior incidents wherein Raytheon had provisionally discharged Flynn. In one case, Flynn was using a prescription drug and an antihistamine, which Raytheon misidentified as illegal drug use. In the other case, Raytheon discharged Flynn for misrepresenting facts and falsifying records in connection with a physical disability claim. In both instances, after investigating the facts, Raytheon changed Flynn's discharges to suspensions, after which Flynn continued his employment with Raytheon.

4. 42 U.S.C. § 12112(b)(5)(A) states:

(b) ... the term "discriminate" includes—
(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate

that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

5. 42 U.S.C. § 12114(c)(2) states:

(c) A covered entity—
(2) may require that employees shall not be under the influence of alcohol or be engaging in the illegal use of drugs at the workplace....

6. Significantly, Congress did not exclude alcoholics from ADA protection as it did current illegal drug users. See 42 U.S.C. § 12114(a). In section 12114(a), Congress specifically excluded employees "currently engaging in the illegal use of drugs" from the protection of the Act by excluding them from the definition of a "qualified individual with a disability." Thus, had Congress sought to exclude alcoholics from the statute's coverage, it could have easily done so.

and that some charged with criminal activity were allowed to participate in drug rehabilitation programs rather than face termination.

Raytheon counters that the ADA explicitly provides that an employer may prohibit employees from being under the influence of alcohol or drugs while on the job. According to Raytheon, the plain language of the statute serves as an absolute defense to Flynn's allegations and requires dismissing his claim. Thus, the initial issue is whether the language of § 12114(c)(2) gives employers an absolute right to terminate an employee who shows up to work under the influence of alcohol, as did Flynn.

■ In statutory construction, courts must ordinarily "assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" *INS v. Cardoza–Fonseca*, 480 U.S. 421, 431–32, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (quoting *INS v. Phinpathya*, 464 U.S. 183, 189, 104 S.Ct. 584, 589, 78 L.Ed.2d 401 [1984], in turn quoting *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 [1982] [citation omitted] ). "Statutory interpretation always begins (and often ends) with the words of the statute itself." *United States v. Southern Management Corp.*, 955 F.2d 914, 920 (4th Cir.1992) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 [1984] ).

■ The ADA, 42 U.S.C. § 12114(c)(2), states unequivocally that an employer "may require that employees shall not be under the influence of alcohol or be engaging in the illegal use of drugs at the workplace." The language could hardly be more direct. An employer can, as a matter of company policy, prohibit employees from showing up to work "under the influence." Section 12114(c)(4) further permits an employer to hold illegal drug users and alcoholics to the same stan-

dards of behavior that it requires of its other employees, even if unsatisfactory behavior is related to the drug use or alcoholism. If the employer chooses to include termination as one of its disciplinary options, the company is permitted to do so. *See Canon v. Clark*, No. 94–8150–CIV–KING, 1994 WL 549759, at *2 (S.D.Fla. Sept. 21, 1994) ("[t]he ADA does not restrict the right of an employer to terminate an employee for alcohol use [and intoxication at work], even if any performance or behavior is related to the employee's alcoholism").

The federal regulations implementing the ADA likewise confirm this conclusion. Title 29 C.F.R. § 1630.15(f) (1993), entitled "Additional defenses," states: "[i]t may be a defense to a charge of discrimination under this part that the alleged discriminatory action is specifically permitted by §§ 1630.14 or 1630.16." Moreover, under § 1630.16(b)(2), a covered entity "[m]ay require that employees not be under the influence of alcohol or be engaging in the illegal use of drugs at the workplace." The section goes on to say at (b)(4) that employers "[m]ay hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior to which the [employer] holds its other employees, even if any unsatisfactory performance or behavior is related to the employee's drug use or alcoholism." *See* 42 U.S.C. § 12114(c)(4).

■ Cases interpreting the Rehabilitation Act, which makes it unlawful for government entities to discriminate on the basis of disability, support this conclusion as well.[7] *See Little v. FBI*, 1 F.3d 255, 259 (4th Cir. 1993) (holding that under the Rehabilitation Act an alcoholic employee's misconduct—drinking on duty—justified FBI's termination action despite his alcoholism handicap under Rehabilitation Act); *Taub v. Frank*, 957 F.2d 8, 10 (1st Cir.1992) (holding Postal Service employee properly discharged be-

---

7. The Court is guided in its interpretation of the ADA by how the courts have construed the language and meaning of its precursor, the Rehabilitation Act of 1973. *See Bolton v. Scrivner, Inc.*, 836 F.Supp. 783, 787 (W.D.Okla.1993), *aff'd*, 36 F.3d 939 (10th Cir.1994); *see also, Nelson v. Ryan*, 860 F.Supp. 76, 82 (W.D.N.Y.1994) ("the

ADA 'borrows much of its substantive framework from § 504 of the Rehabilitative [sic] Act' ") (citation omitted); *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir.1994) ("[t]he federal policies behind the ADA and the Rehabilitation Act are similar").

cause of his unprotected criminal misconduct and not his drug addiction). Alcoholics are not protected from the consequences of their misconduct. *Little*, 1 F.3d at 259; *Richardson v. United States Postal Serv.*, 613 F.Supp. 1213, 1215–16 (D.D.C.1985) (holding alcoholic plaintiff not protected by Rehabilitation Act where misconduct [assault] resulted in discharge). *See also Traynor v. Turnage*, 485 U.S. 535, 549–50, 108 S.Ct. 1372, 1382–83, 99 L.Ed.2d 618 (1988) (denying educational assistance benefits to alcoholic veterans whose behavior rose to the level of "willful misconduct" does not violate Rehabilitation Act). While the ADA, therefore, protects an individual's status as an alcoholic, it is clear that a company need not tolerate misconduct such as intoxication on the job. Thus, Raytheon's termination of Flynn on the basis of conduct that violated a company policy permissible under § 12114(c)(2) is not necessarily unlawful.[8]

■ Flynn argues nevertheless that he did not receive "reasonable accommodation" for his alcoholism as required by 42 U.S.C. § 12112(b)(5)(A). As it is a " 'well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect[,]' " *Allende v. Shultz*, 845 F.2d 1111, 1118 (1st Cir.1988) (quoting *Weinberger v. Hynson, Westcott & Dunning*, 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 [1973] ), this Court must consider the interaction of sections 12114(c)(2) and 12112(b)(5)(A) of the Code.

■ Section 12112(b)(5)(A) requires an employer to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual.

Section 12114(c)(2), meanwhile, gives an employer the authority to require that an employee—any employee—not be under the influence of alcohol at work, and the discretion to impose disciplinary sanctions in line with that requirement. These sections are not contradictory. Reasonable accommodation does not extend to accommodating an alcoholic employee's showing up for work under the influence of alcohol or drinking alcohol on the job. Because Flynn violated a company policy specifically authorized by § 12114(c)(2), he cannot now, without more, belatedly avail himself of the reasonable accommodation provisions of § 12112(b)(5)(A).[9] *See Anderson v. Martin Brower Co.*, No. 93-2333-JWL, 1994 WL 377115, at *5 (D.Kan. June 9, 1994) ("[i]f neither the plaintiff nor the Company acknowledged a particular deficiency in performance due to the employee's disability, there is no basis upon which reasonable accommodation could have been considered").

Flynn, however, does not stop here. Indeed, Flynn further alleges that Raytheon enforced its disciplinary policy in a discriminatory manner. In ¶¶ 9 and 10 of his complaint, Flynn submits that he was terminated after only one incident while others who arrived at work intoxicated were allowed to keep their jobs. Flynn also alleges that employees who were criminally charged in connection with illegal drug use were not terminated.

■ The discriminatory enforcement of a lawful policy is, of course, unlawful. It is well established that an employee can demonstrate unlawful discrimination, despite the fact that she was discharged for misconduct, if her employer treated her differently from

---

8. The legislative history of the ADA is silent on this issue and does not contradict this conclusion. *Cf. Cardoza–Fonseco*, 480 U.S. at 432, n. 12, 107 S.Ct. at 1213, n. 12 (although a court must first look to the "message conveyed by the plain language of the Act[,]" it may also examine legislative history to determine whether it shows any clear legislative intent "contrary to [the] language [of the Act], which would require [the court] to question the strong presumption that Congress expresses its intent through the language it chooses").

9. In this case, Flynn asked for reasonable accommodation only after his termination (during the

grievance process), not during the course of his employment. In fact, in his complaint, Flynn acknowledged that during his employment he was in "denial" of "the fact that he was not in control of his disease and that he needed some kind of special treatment to combat his illness and disability." Complaint at ¶ 16. Flynn admitted himself into a rehabilitation program after his termination and gave evidence to Raytheon of his successful completion of the program during the grievance process, asking for reasonable accommodation in the form of reinstatement or temporary suspension.

other employees not within the protected class who also engaged in the prohibited conduct. *See, e.g., Anderson v. Savage Lab., Inc.,* 675 F.2d 1221, 1224–25 (11th Cir.1982) (holding that where discharge of older employee is assertedly for violation of a company rule, the employee can prove that employer's proffered reason is a pretext for age discrimination by demonstrating that younger employees who engaged in similar conduct were not similarly punished). *Cf. Barbour v. Dynamics Research Corp.,* No. CIV. A. 93–10221–WGY, 1994 WL 568877, at *2 (D.Mass. Sept. 27, 1994) (holding that "inconsistent application of a company policy is not enough to demonstrate pretext ... unless the policy is applied inconsistently on the basis of membership in a protected class"). For purposes of this motion, we must accept Flynn's allegations as true. Because Flynn alleges that Raytheon enforced its no alcohol rule more strictly against him on account of his disability than it did against other employees who are not alcoholics but who nonetheless came to work under the influence, Flynn has stated a claim upon which relief can be granted. Thus, this Court cannot dismiss this suit at this time.

### III.  CONCLUSION

Although the plain language of the ADA, 42 U.S.C. § 12114(c)(2), provides Raytheon with a lawful basis for terminating Flynn for his misconduct, the statute does not provide an **absolute** defense against claims by alcoholics who report to work intoxicated where the plaintiff alleges selective enforcement of a company policy on the basis of a disability. Raytheon's motion to dismiss is, therefore, DENIED.