**Lloyd W. LARSON, Plaintiff,**

v.

**KOCH REFINING COMPANY, Defendant.**

Civ. No. 3–94–1100.

United States District Court, D. Minnesota, Third Division.

Jan. 2, 1996.

† Docket No. 15.

Kevin W. Eide, Eide Law Office, Eagan, MN, Debra E. Schmidt, Dakota Cty. Atty., Hastings, MN, for plaintiff.

Robert L. Collins, Andrea M. Fike, Christin Eaton Garcia, Faegre & Benson, Mpls, MN, Ross W. Townsend, Marilyn S. Hey, Mark V. Holden, Koch Industries Inc., Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. For the following reasons, Defendant's motion is granted.

## I. BACKGROUND

Plaintiff worked for Defendant from December 3, 1973, until April 13, 1994. Over the course of his employment, Plaintiff worked his way up from an hourly employee to a supervisor. Plaintiff served as a supervisor at Defendant's refinery during the last four years of his employment.

For most of Plaintiff's career with Defendant, he performed his duties responsibly. However, during the latter part of his time working for Defendant, Plaintiff and Defendant came into conflict over Plaintiff's performance. On several instances, Plaintiff asked for permission to miss work on short notice. In one instance, Plaintiff called his supervisor at 2 a.m. to ask for that day and the following day off in order to attend a cousin's funeral. In reality, Plaintiff's cousin did not die. While Plaintiff's sudden requests did not result in unsatisfactory performance reviews, Plaintiff was told that, as a supervisor, he had a responsibility to set an example for hourly employees. As a result of Plaintiff's behavior, Defendant delayed Plaintiff's March, 1994, salary review for two months.

Plaintiff contends that he never received anything other than satisfactory performance reviews over the entire course of his employment. In April, 1994, Plaintiff was arrested for drunk driving and assault. Defendant suspended him from work. On April 13, 1994, Defendant terminated Plaintiff's employment. Defendant claims that Plaintiff's

pattern of asking to miss work on short notice and his arrest set bad examples in the workplace. Defendant contends that they fired Plaintiff because he failed to meet general workplace expectations.

Plaintiff contends that his termination was based upon his alcoholism. Plaintiff brings claims under several theories: (1) the Americans With Disabilities Act, 42 U.S.C. § 12182(a); (2) Title VII of the Civil Rights Act of 1964; (3) Intentional Infliction of Emotional Distress, or in the alternative, Negligent Infliction of Emotional Distress; (4) Breach of Contract; and (5) the Minnesota Human Rights Act, Minn.Stat. § 363.01 et seq.

Plaintiff contends that he met the requirements for the workplace, and that Defendant's justification for the termination is merely a pretext for firing Plaintiff because of his alcoholism. Plaintiff never received a bad performance review. In addition, Plaintiff contends that there was nothing wrong with his absences because, despite their short notice, he received permission to miss work. While Plaintiff had been informed that his absences were causing problems in the workplace, Plaintiff contends that he was never informed that his absences would be cause for his discharge.

In addition, Plaintiff claims that his arrest for drunken driving and assault was closely related to his alcoholism. Therefore, it was impermissible to use the arrest as grounds for his dismissal. Plaintiff also claims that he was unfairly discriminated against because other employees who were alcoholics were treated differently than Plaintiff.

Plaintiff also contends that an employee manual produced by Defendant created a binding employment contract between Plaintiff and Defendant which only permitted Defendant to terminate employees "for cause." Plaintiff contends that he performed his duties adequately, and that Defendant had breached its contractual obligations by firing him without proper cause or procedure.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219–20 (8th Cir.1992). As the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555. The Court will grant summary judgment if, "viewing the evidence in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences to be drawn from that evidence, the movant is entitled to judgment as a matter of law." *Arthur Young & Co. v. Reves,* 937 F.2d 1310, 1324 (8th Cir.1991).

## III. DISCUSSION

### A. *Title VII Claims*

Plaintiff did not respond to Defendant's Summary Judgment Motion with respect to this claim. Plaintiff has offered no support for this claim. Therefore, this Court grants Defendant's Summary Judgment with respect to Plaintiff's Title VII claim. (Plaintiff's Second Cause of Action).

### B. *Intentional and Negligent Infliction of Emotional Distress*

Likewise, Plaintiff failed to offer any support for his claims of intentional and negligent infliction of emotional distress. This Court grants Defendant's Summary Judgment Motion with respect to Plaintiff's Third Cause of Action.

It is also apparent to this Court that even if Plaintiff had responded to Defendant's motion, Plaintiff's allegations do not entitle him to relief on these claims. To make out a claim of intentional infliction of emotional distress, Plaintiff must show that Defendant's conduct was extreme and outrageous, that Defendant acted recklessly or intentionally, that Defendant's actions caused emotional distress, and that Plaintiff's distress was severe. *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 438–39 (Minn. 1983). While termination, even wrongful ter-

mination, may be emotionally traumatic for the employee, courts have not recognized employment termination as sufficiently "extreme" or "outrageous" to warrant tort liability. *See Meyer v. Tenvoorde Motor Co.,* 714 F.Supp. 991, 994 (D.Minn.1989) (finding that "[a]brupt discharge without warning does not constitute extreme and outrageous conduct"); *Corum v. Farm Credit Services,* 628 F.Supp. 707, 718 (D.Minn.1986) (finding that employer was not liable for termination without warning despite employee's severe emotional response). Here Plaintiff does not allege any conduct that would transform his termination into an "extreme" act on the part of Defendant. In addition, Plaintiff does not allege injury sufficient to entitle him to relief. *See Peterson v. City of Plymouth,* 945 F.2d 1416, 1420 (8th Cir.1991) (finding that sleeplessness, marital problems, humiliation and anxiety were insufficient to constitute sufficiently severe emotional distress).

■ Likewise, Plaintiff cannot make out a claim of negligent infliction of emotional distress. Such a claim requires that some act of Defendant put Plaintiff within the "zone of danger" of physical injury and that Plaintiff suffer severe emotional distress resulting from a fear of injury. *Meyer,* 714 F.Supp. at 994. Here, Plaintiff has not alleged anything that could constitute a fear of physical injury or "zone of danger." This Court grants summary judgment with respect to Plaintiff's Third Cause of Action.

### C. *ADA & MHRA Claims*

■ Plaintiff claims that his termination violated the provisions of the Americans With Disabilities Act, 42 U.S.C. §§ 12112(a), ("ADA"). It also appears that Plaintiff alleges a violation of the Minnesota Human Rights Act, Minn.Stat. § 363.03, ("MHRA"). Both of these statutes include provisions which prohibit discrimination based on disability. These provisions are based on those found in the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et. seq.* ("Act"). *See State by Cooper v. Hennepin County,* 441 N.W.2d 106, 110 (Minn.1989); *Flynn v. Raytheon Co.,* 868 F.Supp. 383, 386 (D.Mass.1994). Because the ADA and MHRA use substantially the same language in defining disability discrimi-

nation, this Court treats both claims together.

■ Both the ADA and MHRA define disability as

any person who (1) has a physical or mental impairment which substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.

Minn.Stat. § 363.01, subd. 13; 42 U.S.C. § 12102(2)(A)–(C). Federal regulations define "major life activity" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Employees disabled by alcoholism are protected by both the MHRA and ADA. *Khalifa v. Gruys, Johnson & Assoc.,* 407 N.W.2d 733, 735 (Minn.Ct.App.1987); *Schmidt v. Safeway, Inc.,* 864 F.Supp. 991, 996 (D.Or.1994).

■ Even if Plaintiff could establish that he was disabled for purposes of the ADA and MHRA, it is clear that he is not entitled to relief. The purpose of the Rehabilitation Act—on which both the MHRA and ADA are based—is to protect the disabled from being discriminated against based on their disability. While these statutes "protect an individual's status as an alcoholic, it is clear that a company need not tolerate misconduct...." *Flynn,* 868 F.Supp. at 387. As the court said in *Flynn,* "alcoholics are not protected from the consequences of their conduct." 868 F.Supp. at 386–87.

■ Plaintiff does not dispute the fact that supervisors had discussed his pattern of short-notice absences. While Plaintiff had received permission to miss work, due mostly to his sometimes fictional excuses, he had been warned that such actions were frowned upon at the workplace. Despite warnings, Plaintiff continued to ask for permission to miss work, calling his supervisor in the early morning hours on the day he intended to miss work. Plaintiff contends that he was never told that his behavior could result in termination. However, Plaintiff does not dispute that he had been warned about his actions and that his salary review had been postponed for two months due to his behav-

ior. In addition, Plaintiff's arrest for drunk driving and assault gave Defendant cause to terminate Plaintiff's employment. Plaintiff recognized that supervisors at Koch Refining were expected to be role models and would be held to a higher standard than normal hourly workers. Defendant's termination of Plaintiff for such misconduct was not unlawful. *See Maddox v. Univ. of Tennessee*, 62 F.3d 843 (6th Cir.1995) (finding that employer could fire employee for drunken driving conviction even though connected to alcohol abuse); *Richardson v. U.S. Postal Serv.*, 613 F.Supp. 1213, 1215–16 (D.C.D.C.1985) (finding that Rehabilitation Act "does not prohibit an employer from discharging an employee for improper off-duty conduct when the reason for the discharge is the conduct itself, and not any handicap to which the conduct may be related").

Moreover, the MHRA explicitly provides that " 'disability' excludes any condition resulting from alcohol or drug abuse which prevents a person from performing the essential functions of the job in question ..." Minn.Stat. § 363.01, subd. 35. Even if Plaintiff could argue that his misconduct is inseparable from his alcoholism, the MHRA explicitly excludes problems that result from such a condition. Plaintiff's pattern of short-notice absences and his criminal legal troubles are not protected conduct.

 Plaintiff contends that his problems could have been accommodated through alcohol counseling and other measures. The ADA requires that an employer show that reasonable accommodation was not available which would allow the employee to perform the essential elements of their job effectively. *See* 42 U.S.C. § 12112(b)(5)(A). The MHRA also provides that

[i]f a respondent contends that the person is not a qualified disabled person, the burden is on the respondent to prove that it was reasonable to conclude the disabled person, with reasonable accommodation, could not have met the requirements of the job or that the selected person was demonstrably better able to perform the job.

Minn.Stat. § 363.01, subd. 35. However, providing accommodation is only appropriate where the employer knows that the Plaintiff is disabled and is in need of accommodation. *See Miller v. National Casualty Co.*, 61 F.3d 627, 629 (8th Cir.1995) (finding that "[b]efore an employer must make accommodation for the physical or mental limitation of an employee, the employer must have knowledge that such a limitation exists"). Even where the conduct causing termination may result from a disability, e.g. tardiness or poor work performance, courts have found that such behavior is insufficient to impute knowledge of the disability to the employer. *See Hedberg v. Indiana Bell Telephone Co.*, 47 F.3d 928 (7th Cir.1995) (finding that tardiness and other work problems were insufficient to give employer "knowledge" of disability); *Leary v. Dalton*, 58 F.3d 748 (1st Cir.1995) (finding that where employee had been arrested for driving while intoxicated and drug possession, Navy had no obligation to accommodate alcoholic employee where Navy had no knowledge of alcoholism). As the court said in *Hedberg v. Indiana Bell Telephone Company*,

[t]he ADA hardly requires that merely because some perceived tardiness and laziness is rooted in disability, an employer who has not been informed of the disability, and who has no reason to know of the disability, is bound to retain all apparently tardy and lazy employees on the chance that they may have a disability that causes their behavior.

47 F.3d at 934.

Plaintiff alleges that Defendant knew, or should have known, of his alcoholism. He points to several instances in which he contends that Defendant was put on notice of his alcoholism. On December 8, 1993, Plaintiff had a conversation with Thomas Gadow, his supervisor. In that conversation, Plaintiff told Gadow that his wife would not consider reconciling with him unless he did something about his drinking problem. Plaintiff cites another instance where he allegedly told Gadow of his drinking problem and explained to him that he was in treatment. Plaintiff contends that he was advised to "take care of himself." However, the evidence cited by Plaintiff indicates that these discussions were part of the same conversation. *See* Larson, Deposition, pp. 180–86. In addition, Gadow's

deposition testimony and a written record of the conversation with Plaintiff indicate that Plaintiff told Gadow that he did not have a drinking problem. Plaintiff did not dispute this evidence. Larson, Deposition, p. 180–82.

██ Plaintiff also cites to the March 17, 1994, phone call between Gadow and Plaintiff at 2 a.m. where Plaintiff asked for permission to miss work on March 17 and 18. In a memorandum describing that conversation, Gadow mentions that he has some concerns regarding Plaintiff's request, since it was St. Patrick's Day. Plaintiff contends that since drinking is a traditional part of the St. Patrick's Day holiday, Gadow's concerns were based on a belief that Plaintiff would be drinking alcohol. However, Gadow had recently cautioned Plaintiff that his short-notice requests for leave were inappropriate. The fact that Defendant had some concerns regarding Plaintiff's short-notice request for leave on a holiday does not constitute knowledge of Plaintiff's disability.

██ In addition, Plaintiff cites deposition testimony of Raymond Knutson, Assistant Refinery Manager. Mr. Knutson denied any knowledge of Plaintiff's alcoholism. However, Plaintiff contends that Knutson did know of Plaintiff's problem.

> [W]hen asked if anything came to his attention that might suggest an alcohol problem after Mr. Larson's discharge, Mr. Knutson stated "yes." When asked to explain and elaborate, Mr. Knutson stated that the nature of the arrest and "the circumstances that *led to* his discharge."

Plaintiff's Memorandum in Opposition to Defendant's Summary Judgment Motion, p. 9. Plaintiff contends that Knutson's statements suggest that Knutson knew of Plaintiff's alcoholism. Plaintiff ignores Knutson's testimony that he first found out about Plaintiff's alcoholism when Plaintiff filed this lawsuit. It is understandable that once Plaintiff was discharged and filed this lawsuit, hindsight may have indicated that certain types of behavior were consistent with alcoholism. However, absenteeism and a criminal arrest do not demonstrate that Defendant knew that Plaintiff was disabled when he was discharged.

██ Plaintiff relies on *Ferguson v. U.S. Dept. of Commerce,* 680 F.Supp. 1514, 46 F.E.P. 241 (M.D.Fla.1988) and *Schmidt v. Safeway, Inc.,* 864 F.Supp. 991 (D.Or.1994) to argue that Plaintiff's discussions with Gadow and Plaintiff's workplace behavior were sufficient to give notice to Defendant that Plaintiff was an alcoholic. These cases do hold that a Plaintiff need not affirmatively tell an employer of his or her disability if other indicators should lead the employer to "know" of the disability. However, imputing such knowledge is inappropriate where the employee has openly denied having any problems. In *Hamm v. Runyon,* an employee suffered from a physical disability that caused him to walk with difficulty at the workplace. 51 F.3d 721, 725–26 (7th Cir. 1995). The Seventh Circuit found that even though the employee had been asked about his difficulty in walking, the employer did not have knowledge of this disability because the employee denied having any problem. *Id.* Like the employee in *Hamm,* Plaintiff denied having a disability.

██ Plaintiff also alleges that he was discriminated against because he was treated differently than other employees. However, Plaintiff contends that other *alcoholic* employees were given more favorable treatment. While the ADA does provide protection where employers have treated disabled employees less favorably than non-disabled employees, the ADA provides no avenues for relief for situations like those alleged by Plaintiff. The ADA does not prohibit differential treatment among disabled employees. *See Cramer v. Florida,* 885 F.Supp. 1545, 1551 (M.D.Fla.1995). This Court grants Defendant's Motion for Summary Judgment with respect to Plaintiff's First and Fifth Causes of Action.

### D. Breach of Contract

Plaintiff alleges that Defendant breached its employment contract with Plaintiff. Plaintiff contends that his contract permitted termination only "for cause" and that his termination constituted a breach of his employment contract.

In general, Minnesota law presumes that employment is "at will." *Thompson v. Campbell*, 845 F.Supp. 665, 667 (D.Minn.1994). However, "[a] promise of employment on particular terms, if in the form of an offer and if accepted by the employee for valuable consideration, may create a binding unilateral contract which will alter an at-will contract." *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 371 (Minn.1995), *citing Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626 (Minn.1983).

Plaintiff relies on *Pine River* to argue that Defendant breached its contractual obligations. In *Pine River*, the court found that an employee handbook altered the employment contract from its "at-will" status. *Pine River*, 333 N.W.2d at 626. The court found that provisions requiring a three step process for termination and review by an executive officer precluded the "at-will" termination of employees. *Id.* Plaintiff claims that Defendant's Industrial Relations Policy ("Policy") created an employment contract which permitted termination only "for cause." The Policy provided that one of the company's practices was "[t]o have the rules of the company lived up to, and discipline administered fairly, without prejudice, and only for cause." Policy, ¶ 11. Plaintiff argues that "for cause" termination was therefore part of his employment contract. He alleges that Defendant breached their contract by terminating him in the way that they did.

Defendant argues that this policy was part of the contract provisions for unionized employees and not the supervisory, managerial staff. Defendant provides evidence that the Industrial Relations Policy was given to Plaintiff as part of employment materials advising supervisors on how to deal with union representatives and members. Plaintiff offers no evidence to dispute this claim, except to cite another section of the Policy stating that the company's practices are

> [t]o recognize that industrial relations is the responsibility of the operating management, as well as that of our Industrial Relations people. To acknowledge that there is no substitute for management in these matters—president, vice president, manager, superintendent, supervisor—everyone in a position of authority or supervision is a part of the company's Industrial Relations Program.

Policy, ¶ 1. However, the fact that this general statement includes all employees in its program of industrial relations does not indicate that it subjects all employees to the "for cause" termination clause. This paragraph encourages all employees to work on industrial relations, not just those specializing in that area. Defendant's generalized expression of desire that all employees contribute to improving industrial relations within the company does not subject all employees to the requirements of Defendant's termination policy. In addition, the implausibility of Plaintiff's interpretation of the Policy is compounded by the fact that finding "for cause" termination for supervisors would also require a finding of "for-cause" termination for Defendant's President and Vice-President—an unusual and improbable result.

However, even had Defendant's Policy created an employment contract permitting termination "for cause" only, Defendant had sufficient cause. As discussed above, Plaintiff had a poor attendance record. While Plaintiff received permission to miss work each time he called in on short notice, he was warned that such absences were not appropriate. Plaintiff was told that his short-notice absences resulted in down-time for other employees. He was also told it set a bad example for hourly workers. Despite these statements from his supervisors, Plaintiff continued the same pattern. In addition, Plaintiff's conduct outside the workplace was sufficient to warrant dismissal. It is clear that supervisory employees at Koch were held to a higher standard of care than normal hourly employees. Defendant's arrest for drunk driving and resisting arrest were sufficient cause for his termination.

Accordingly, **IT IS HEREBY ORDERED THAT:**

Defendant's Motion for Summary Judgment with respect to all of Plaintiff's claims is GRANTED.

LET JUDGMENT BE ENTERED AC-
CORDINGLY.