**Henry S. LIPPMAN, Plaintiff,**

**v.**

**SHOLOM HOME, INC., Defendant.**

**Civil No. 4–95–635.**

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 20, 1996.

R. Ann Huntrods and Debra K. Revzen, Briggs & Morgan, P.A., St. Paul, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. The plaintiff's motion will be denied and the defendant's motion granted.

### Facts [1]

Sholom Home, Inc. ("Sholom Home") is a nonprofit corporation serving the physical, social, psychological, and spiritual needs of infirm elderly members of the Jewish Community. Sholom Home operates two facilities, Sholom Home East in St. Paul, Minnesota, and Sholom Home West in St. Louis Park, Minnesota. On January 27, 1986, Sholom Home hired Lippman as a "consultant for intergenerational program" in both the social services and activities departments of Sholom Home East. Lippman's duties included working with the staff of outside Jewish agencies to develop ongoing programs linking younger members of the local Jewish community with Sholom residents; attending, and in some cases leading, a variety of group activities; helping to transport and escort residents to activities; coordinating religious services; and covering other positions as needed.

Lippman was initially supervised by Dory Hueners, Director of Activities; Jean Cooke, Assistant Director of Activities; and Marion Gepner, Director of Social Services. In 1993, Brenda Iliff replaced Hueners as Director of Activities.

From 1986 to 1993 Lippman received numerous performance reviews from Sholom Home. These reviews rated Lippman from slightly unsatisfactory to "exceeds expectations." The reviews consistently noted that Lippman was a kind and sensitive employee with strong knowledge of Jewish culture and

Andre J. Zdrazil, Zdrazil Law Office, St. Paul, MN, for Plaintiff.

---

1. The facts are taken from the parties' joint stipulation of facts, filed May 1, 1996, and from the affidavits accompanying the parties' briefs.

religion, but that he had problems with tardiness, scheduling, and organization.

On October 7, 1993, Iliff ranked Lippman "meets expectations." Approximately two months later, Lippman was suspended for one week for allegedly falsifying his time card, calling in late on numerous occasions, sleeping on the job, and failing to be on time for scheduled Sholom Home activities. On March 11, 1994, Iliff rated Lippman "Does Not Meet Expectations" in his annual performance review. Iliff noted that Lippman needed to arrive earlier for activities, punch in and out on time, work scheduled hours, and avoid being tardy. On March 14, 1994, Iliff terminated Lippman's employment because of his unsatisfactory attendance record and failure to follow the Sholom Home schedule.

Iliff informed Lippman that he would be paid and could work until April 8, 1994, but that his termination would be immediate if he was not at his assigned work station, was late for activities, or was disruptive. On March 17, 1994, Iliff asked Lippman to leave Sholom Home immediately. Lippman was paid through April 8, 1994.

On March 18, 1994, Leslie Thomas, Sholom Home's Director of Human Resources, sent Lippman a letter reiterating the reasons for Lippman's termination. In response, Lippman wrote to Michael Klein, Sholom Home's Administrator, regarding available appeal procedures. On March 28, 1994, Klein wrote to Lippman and explained appeal procedures were unavailable. Klein also detailed the circumstances leading up to Lippman's termination. Finally, Klein suggested potential employment opportunities for Lippman and suggested Lippman "take advantage of assessment services which you can access through Medica and see if there are any medical or psychological concerns that affect your ability to do your work."

On April 5, 1994, Lippman requested an unpaid leave of absence from Sholom Home although he was not working at that time. At approximately the same time, Lippman informed Sholom Home for the first time that he believed he suffered from attention deficit disorder. Sholom Home neither responded to Lippman's request nor granted the leave.

After his termination, Lippman filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination. The EEOC subsequently issued Lippman a right to sue letter. On October 17, 1995, Lippman filed a one count complaint alleging Sholom Home violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

### Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of a court is not to weight the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *AgriStor Leasing*, 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### Discussion

■ The ADA provides that "[N]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring, advancement, or discharge of employees...." 42 U.S.C. § 12112(a). A qualified person is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position...." 42 U.S.C. § 12111(8). The gravamen of plaintiff's complaint is that Sholom Home failed to accommodate his attention deficit disorder, and terminated him because of behavior caused by his disability.

■ Typically, ADA cases are analyzed employing the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Price v. S–B Power Tool,* 75 F.3d 362, 364–65 (8th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996); *Reiff v. Interim Personnel, Inc.,* 906 F.Supp. 1280, 1286 (D.Minn. 1995). Under *McDonnell Douglas,* the plaintiff is first required to establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. If the employer carries its burden, the plaintiff must then show the defendant's proffered reason is pretextual and that discrimination was the real reason for the defendant's action. *See Id.*

■ In the instant case, however, it is unnecessary to reach the issue of whether Lippman has shown a prima facie case under *McDonnell Douglas* because, as a matter of law, an employer cannot be liable for discriminatory discharge if, at the time of the discharge, the employer has not been informed of the disability and has no reason to know of the disability. *See Miller v. National Cas. Co.,* 61 F.3d 627, 629–30 (8th Cir.1995); *Larson v. Koch Ref. Co.,* 920 F.Supp. 1000, 1005 (D.Minn.1996).[2] "[A]n employer [is not] expected to accommodate disabilities of which it is unaware." 29 C.F.R. app. § 1630.9 (1994). As the Eighth Circuit has explained, "[t]he logic of this proposition is overwhelming and has been affirmed repeatedly by other courts construing both the ADA and the Rehabilitation Act of 1973." *Miller,* 61 F.3d at 629–30 (citations omitted).

The decision to terminate Lippman was made on or before March 14, 1994, and was communicated to Lippman on March 14, 1994.[3] The earliest Sholom Home was informed Lippman might have a medical problem was on April 5, 1994. Therefore, the Court cannot infer that the decision to terminate was motivated by Lippman's disability.

Lippman claims that Sholom Home knew or should have known he was disabled at the time the termination decision was made. To support this argument, Lippman asserts that Klein's March 28, 1994 letter suggesting Lippman use the Employee Assistance Program ("EAP") creates an inference that Klein and Sholom Home had notice of, and regarded Lippman as having, a disability. The Court does not agree that the letter supports such an inference. Read in the light most favorable to Lippman, the letter only evidences that Klein suspected Lippman

2. Cases arising under the Rehabilitation Act, which defines disability in substantially the same manner as the ADA, have reached the same conclusion. *See Leary v. Dalton,* 58 F.3d 748, 753 (1st Cir.1995); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 933–34 (7th Cir.1995); *Landefeld v. Marion Gen. Hosp. Inc.,* 994 F.2d 1178, 1181–82 (6th Cir.1993); *Carlson v. InaCom Corp.,* 885 F.Supp. 1314 (D.Neb.1995); *Mazzarella v. United States Postal Serv.,* 849 F.Supp. 89, 96–97 (D.Mass.1994); *Dutson v. Farmers Ins. Exch.,* 815 F.Supp. 349, 352 (D.Or.1993), *aff'd,* 35 F.3d 570 (9th Cir.1994).

3. Lippman argues strenuously that since Sholom Home had been informed of Lippman's disability prior to last day he was paid by Sholom Home, April 8, 1994, the Court should infer the decision to terminate was based on Lippman's disability. This argument is without merit. The critical date is when Sholom Home made the decision to terminate Lippman, not the last day Lippman was paid by Sholom Home. *See, e.g., Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 934 (7th Cir.1995); *Magruder v. Runyon,* 844 F.Supp. 696, 705 (D.Kan.1994), *aff'd,* 54 F.3d 787 (10th Cir.1995).

could be assisted in some manner by the EAP. Mere suspicion, however, does not translate into knowledge. Furthermore, the undisputed evidence reflects that Klein did not believe Lippman was disabled at the time Sholom Home decided to terminate Lippman.

■ Lippman also asserts Sholom Home should have known he had a disability because of his performance problems. Lippman claims an employer should ask itself three questions if an employee has continuing performance problems: (1) does the employee lack intelligence, training or experience; (2) does the employee have personal or social problems such as chemical dependency; and (3) does the employee dislike the position or co-workers. If the answer to each question is "No," then the employer should infer the employee has a disability.

■ Although plaintiff's proposed test for inferring knowledge of a disability is novel, it is both illogical and unsupported by law. An employee's poor performance may be caused by a number of factors beyond the four identified by plaintiff. Furthermore, the ADA does not place upon the employer the burden of determining why an employee fails to perform satisfactorily. When poor performance results from a disability, "such behavior is insufficient to impute knowledge of the disability to the employer." *Larson v. Koch Refining Co.*, 920 F.Supp. 1000, 1005 (D.Minn.1996). As the Seventh Circuit Court of Appeals has stated:

> [t]he ADA hardly requires that merely because some perceived tardiness and laziness is rooted in disability, an employer who had not been informed of the disability, and who has no reason to know of the disability, is bound to retain all apparently tardy and lazy employees on the chance that they may have a disability that causes their behavior.

*Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir.1995). The ADA clearly puts the burden on the employee to inform the employer of any disability and the need for accommodation. An employer is not obligated to observe employees for any behavior which may be symptomatic of a disability, and then divine that the employee actually suffers from a disability.

■ Finally, Lippman argues that Sholom Home knew he had a disability and accommodated his disability by reassigning and reorganizing his job duties over the seven years he was employed at Sholom Home. However, the Court cannot find the reassignment or restructuring of Lippman's job duties was *de facto* accommodation. The record shows Sholom Home valued Lippman for the aspects of his job he performed well, and attempted to assist and improve his work performance in other areas. The Court cannot infer Sholom Home knew Lippman was disabled simply because it attempted to improve his performance by giving him additional training or reassigning duties, rather than immediately terminating him. The ADA was not intended to force employers to terminate employees who may need some additional assistance solely because of the risk that an employee may at a later date be diagnosed as disabled and then claim the employer had prior "knowledge" of the disability.

[8] Even assuming Lippman could prove Sholom Home knew he was disabled at the time it decided to terminate his employment, he has submitted no evidence showing Sholom Home's articulated reasons for his termination were pretextual. The evidence reveals Lippman had ongoing performance problems and was given numerous warnings, as well as a suspension, prior to termination. Lippman concedes that he experienced the same or similar performance problems since he started employment with Sholom Home in 1986. Lippman has no evidence suggesting Sholom Home's reason for the termination was pretextual and based upon Lippman's disability. In fact, the record reflects that Sholom Home used progressive discipline and only terminated Lippman after he failed to meet explicit performance standards.

The Eighth Circuit has recognized that employment discrimination laws "have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell*

*Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995). Regardless of whether the Court agrees with Sholom Homes employment decision, Lippman has failed to present evidence from which a reasonable jury could conclude the decision to terminate his employment was based upon his disability.

### Conclusion

Accordingly, based on the foregoing, and all the files, records, proceedings, and arguments of counsel, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 28) is **DENIED;** and

2. Defendant's Motion for Summary Judgment (Doc. No. 20) is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**