Phyllis B. GOLSON–EL, Plaintiff,

v.

Marvin T. RUNYON, Postmaster General, Defendant.

Civ. A. No. 92–4637.

United States District Court,
E.D. Pennsylvania.

Feb. 8, 1993.

Joseph M. Gontram, Mc Bride, Ruch & Gontram, Philadelphia, PA, for plaintiff.

Robert L. Sawicki, Lorenzo Cobb, Sp. Asst. U.S. Attys., Office of Field Legal Services, Charles F. Kappler, U.S. Postal Service, Philadelphia, PA, for defendant.

## MEMORANDUM/ORDER

KATZ, District Judge.

AND NOW, this 8th day of February, 1993 upon consideration of Plaintiff's Motion for Summary Judgment, Defendant's Motion for Summary Judgment or, in the alternative, to Dismiss Plaintiff's Request for Punitive Damages, and Compensatory Damages and to Strike Plaintiff's Demand for a Jury Trial, it is hereby ORDERED that the Plaintiff's Motion is DENIED and Defendant's Motion for Summary Judgment is GRANTED. The Motions to Dismiss Plaintiff's Request for Punitive Damages, and Compensatory Damages and to Strike Plaintiff's Demand for a Jury Trial are DENIED as moot.

FACTS

The Plaintiff was hired as a mail handler by the United States Postal Service on January 22, 1983. Def.Attach. A, Tab 1. She remained in this position under she was fired on February 13, 1992. *Id.* at Tab 12.

The plaintiff admits to being an alcoholic. Pl.Mem., Ex. 1, Aff. Golson–El, ¶ 2. She

has been an alcoholic since at least 1986. *Id.*

Between 1986 and 1990 the plaintiff was absent from work on numerous occasions. Pl.Mem., Ex. 2, Notice of Proposed Removal. The plaintiff claims that all of those absences were caused by her alcoholism. Pl.Mem., Ex. 1, ¶ 3. Because of these absences, the defendant gave the plaintiff written notice of its intention to remove her from employment after 30 days. Pl.Mem., Ex. 2. This notice was dated April 13, 1990. It was amended on August 13, 1990. *Id.* The plaintiff filed a grievance regarding the removal notice.

On October 5, 1990, the plaintiff, her union, and the defendant reach a deal to settle the grievance. The plaintiff, the defendant, and the plaintiff's union signed an agreement (hereinafter "Last Chance Agreement"). Pl.Mem., Ex. 3. On the same day, the plaintiff also signed an "Agreement of Participation in EAP" (hereinafter "EAP Agreement").[1] Pl.Mem. Ex. 4.

The Last Chance Agreement stated that "[b]ecause of the problem relating to the disease of alcoholism . . . , and your agreement to solicit assistance from the EAP *Program of the Agency, favorable consideration in the aforecited Removal action is being shown. . . .*" Pl.Mem., Ex. 3, p. 1. The Last Chance Agreement also provided that

> During the period of casual appointment and of the first year of career appointment, the [plaintiff]'s attendance will be reviewed, and if at anytime her unscheduled absences exceed 3% of her scheduled workhours, regardless of the reason for such absence, with the exception of acts of God, she will be summarily dismissed.

*Id.* at ¶ 10. The 89 day casual appointment was to begin on October 13, 1990 and run through January 10, 1991. *See Id.* ¶¶ 1, 8.

The first year of career appointment ran from January 11, 1991 to January 10, 1992.

The plaintiff was absent from work on several different occasions from July 27, 1991 until January 8, 1992. These absences represents 78.64 hours of work. Pl. Mem., Ex. 7. These absences exceed the three percent condition in the Last Chance Agreement.[2] Pl.Mem. at 16. The plaintiff asserts that none of these absences were due to alcoholism; instead all of these absences were due to illness and therefore beyond her control.[3] Pl.Mem., Ex. 1, ¶¶ 7, 8. She has doctors' notes to support her claims for most of the days in question. *See* Pl.Mem., Ex. 8. This claim is not challenged by the defendant. *See* Def.Mem. at 13.

By Notice of Proposed Removal dated January 14, 1992, the defendant informed the plaintiff of its plan to terminate her. Pl.Mem., Ex. 7. The termination was based on the "Failure to meet the conditions of a signed last chance agreement— FAILURE TO BE REGULAR IN ATTENDANCE/UNSCHEDULED ABSENCES." *Id.* (emphasis in the original). The letter then listed plaintiff's absences from July 27, 1991 until January 8, 1992. The Notice of Proposed Removal also reviewed the historical facts of the plaintiff's past record: three suspensions for Failure to Meet Attendance Requirements/Unscheduled Absences; one suspension for Absent from Assigned Work Area With Out Authorization; one suspension for Failure to Follow Instructions; and one Letter of Warning for Failure to Meet Attendance Requirements/Unscheduled Absences. Pl. Mem., Ex. 7. These disciplinary measures were taken between 1986 and 1989 and prior to the signing of the Last Chance Agreement. *Id.*

At the time of her actual termination on February 13, 1992, the plaintiff had 18 hours of accumulated, unused annual leave

---

1. EAP means Employee Assistance Program.

2. The plaintiff argues that she only took 0.13 hours of unscheduled leave above the 3% limit of the Last Chance Agreement. Pl.Mem. at 16. Nevertheless, the plaintiff violated Last Chance Agreement.

3. In addition to four different periods of illness, the plaintiff was absent without permission on one day and late for work on three separate occasions. Pl.Mem., Ex. 7.

and 41.30 hours of unused sick leave. Pl. Mem., Ex. 9.

## ALCOHOLISM AS A HANDICAP

■ The Rehabilitation Act prohibits the Postal Service from discriminating against individuals based on their handicaps. 29 U.S.C. § 794 ("No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap ... be subject to discrimination ... under any program or activity conducted ... by the United States Postal Service."). Alcoholism is a handicap within the protected class of handicaps. *See Teahan v. Metro–North Commuter R. Co.*, 951 F.2d 511, 517 (2d Cir.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992); *Fuller v. Frank,* 916 F.2d 558, 561 (9th Cir.1990); *Gallagher v. Catto,* 778 F.Supp. 570, 577 (D.D.C.1991). Nevertheless, federal protection of handicapped individuals does not include "any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others." 29 U.S.C. § 706(8)(C)(v).

■ In this case, the plaintiff claims not to have abused alcohol since she began participating in the EAP. Pl.Mem., Ex. 1, ¶ 5. In addition, illness unrelated to alcoholism accounts for the majority of her absences from work, since the signing of the Last Chance Agreement. Pl.Mem., Ex. 8. Finally, the defendant has proffered no evidence to indicate, nor has it argued that the plaintiff's absences may have been caused by the plaintiff's alcoholism. Therefore, as a "rehabilitated" alcoholic, the plaintiff is entitled to the protection afforded by the Rehabilitation Act.

## FAILURE TO ESTABLISH PRIMA FACIE CASE

Plaintiff has failed to raise a genuine issue of material fact to make out a prima facie case. *See Strathie v. Department of Transp.,* 716 F.2d 227, 230 (3d Cir.1983); *Doe v. New York Univ.,* 666 F.2d 761 (2d Cir.1981). Specifically, the plaintiff failed to make out a prima facie case because she has not demonstrated that she was terminated from the position "solely by reason of her handicap."

■ The plaintiff must show that she was terminated from the position solely by reason of her handicap. Termination of any employee "which is justified as being due to absenteeism shown to be caused by substance abuse is termination 'solely by reason of' that substance abuse" for statutory purposes. *Teahan,* 951 F.2d at 517. An employer does not "rely" on a handicap, however, when it can point to behavior that is not causally related to that handicap as the reason for the termination. *See id.* at 516.

■ The termination was not based "solely" on the plaintiff's handicap, but was rather based on her violation of the Last Chance Agreement. None of the absences which caused termination were related to alcoholism. The Postal Service in its Notice of Proposed Removal based its decision on the plaintiff's record of absences—specifically the failure of the plaintiff to meet the attendance conditions of the Last Chance Agreement. Pl.Mem., Ex. 7. The Last Chance Agreement was a reasonable attempt to accommodate the plaintiff's alleged handicap. The termination action was based on the plaintiff's absences between July, 1991 and January, 1992, which violated the terms of the Last Chance Agreement. None of these absences were due to alcoholism. On January 8, 1992, the plaintiff's absences exceeded three percent of her scheduled workhours. The defendant can therefore point to behavior that is not causally related to alcoholism—plaintiff's failure to maintain an attendance record within the parameters of the Last Chance Agreement—as the reason for the termination.

This court must strictly construe the Last Chance Agreement. *See Bakers Union Factory, No. 326 v. ITT Continental Baking Co.,* 749 F.2d 350 (6th Cir.1984). While the settlement agreement conditions do seem harsh in relation to the actual

561

infraction, when parties to a collective bargaining agreement agree to an unambiguous provision in a settlement agreement to end a grievance, the court's role is not to reinterpret that provision simply because the court believes the provision is "too severe." *Id.* The plaintiff voluntarily entered into the Last Chance Agreement. Def.'s Attach. B, p. 80–81. She understood that there were options other than signing the agreement that were available to her. *Id.* She decided not to pursue these option, however, and instead she elected to sign the Last Chance Agreement instead. *Id.* She must abide by its consequences.

Of course, the plaintiff would not be subject to the Last Chance Agreement but for her alcoholism. The plaintiff, however, was fired because she breached the Last Chance Agreement, not because she was an alcoholic. To attribute the firing to alcoholism is defective reasoning that skips the key step of reality, i.e., the prior accommodation to alcoholism by the Last Chance Agreement. Such defective reasoning would render Last Chance Agreements nugatory, because every breach could be attributed to a development connected to an alcoholic's problems. The Last Chance Agreement was a reasonable accommodation. Its lines were bright and strict. Plaintiff crossed those lines. In fairness to the employer and other alcoholics who will need Last Chance Agreements, I will not discourage their use by making their terms meaningless.[4]

The plaintiff has failed to established that her termination was based solely on her handicap, and therefore she has failed to establish a prima facie case.

---

4. *Cf. Walton v. Department of the Navy,* 1986 WL 10660, at *2 (E.D.Pa. Sept. 26, 1986) ("One wonders how many chances the employer must make before he is permitted to fire an employee whose excessive absenteeism has a disruptive effect on the productivity and efficiency of a workplace.... To punish the [agency] for its final effort at leniency by reversing this decision would result in encouraging federal employers to dismiss an employee the first time it had reason to do so, even if some compassion urged the employer to give the wayward employee 'one final chance.' ").