William Andrew MARARRI,
Plaintiff–Appellant,

v.

WCI STEEL, INC., a/k/a Warren
Consolidated Industries,
Defendant–Appellee.

No. 96–4195.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 31, 1997.

Decided Dec. 2, 1997.

John J. Dixon (argued and briefed), Youngstown, OH, for Appellant.

Edward C. Kaminski (argued and briefed), Belkin, Billick, Kaminski, Harrold & Wiencek, Akron, OH, for Appellee.

Before: LIVELY, KENNEDY, and NELSON, Circuit Judges.

LIVELY, Circuit Judge.

## OPINION

In this action, brought under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et. seq., the plaintiff complains that his employer discriminated against him by discharging him on account of a disability. The disability claimed by the plaintiff is alcoholism, a condition that is protected under the ADA. The question in this case is whether the employer violated the ADA by discharging the plaintiff for breaching the terms of a "last chance agreement" (L.C.A.), even

though the breach related to the plaintiff's alcoholism.

Finding no genuine issue of material fact after a period of discovery, the district court granted the employer's motion for summary judgment. Although we do not adopt all of the district court's reasoning, we agree with the ultimate conclusion that the defendant was entitled to judgment as a matter of law. Accordingly, the judgment of the district court will be affirmed.

## I.

### A.

William Mararri, a member of the United Steel Workers of America (Union), was employed by Warren Consolidated Industries (WCI) and its predecessors for more than 20 years. Prior to his discharge on October 28, 1992, Mararri had previously been discharged for two alcohol-related events. In 1989, he was terminated after refusing to submit a urine sample for drug and alcohol testing. He filed a grievance and was reinstated after entering into a last chance agreement with WCI. By signing the L.C.A., Mararri acknowledged his alcohol abuse problem and agreed to attend rehabilitation sessions, submit urine or blood samples when requested for a period of one year, and participate in Alcoholics Anonymous.

In 1991, Mararri was terminated a second time after testing positive for alcohol. He grieved his termination, contending that the L.C.A. had expired and that the random test was unlawful. Although WCI maintained that he had been tested for "cause" (based upon the odor of alcohol on his breath), WCI entered into a second last chance agreement with him on April 26, 1991, and he was reinstated once again. This time, the L.C.A. required Mararri to submit urine samples at management's request for a five-year period and specified that positive test results "at any level" would be sufficient cause for his termination. The L.C.A. also provided that "reporting to work after having consumed alcoholic beverages or drugs" would be grounds for discharge. In addition, Mararri once again agreed to attend rehabilitation and Alcoholics Anonymous meetings. In his deposition, Mararri testified that he understood that he would be subject to random testing for a five-year period and that he would be terminated if alcohol were found in his system.

On October 22, 1992, Mararri and some other employees were required to provide urine samples for testing. The laboratory results revealed that Mararri had 133 mg/ml of alcohol in his urine, just slightly below the Ohio statutory level for being "under the influence of alcohol." See O.R.C. § 4511.19(A)(4). WCI suspended Mararri on October 26, 1992, and converted his suspension into a discharge on October 28, 1992. Mararri admitted that he consumed 4 or 5 beers at around 10 or 11 p.m. on the night of October 21, 1992, and had taken a "healthy" dose of NyQuill at around 5:30 a.m. on October 22 before reporting to work. He pursued an unsuccessful grievance, and the Union declined to take his grievance to arbitration. In March of 1993, Mararri filed a charge of disability discrimination with the Equal Employment Opportunity Commission (EEOC). He then filed suit against WCI and the Union in a "hybrid section 301 action" pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, alleging unlawful discharge. While that action was pending, the EEOC issued its "right to sue letter." Mararri subsequently filed the present action against WCI, alleging that his discharge violated the ADA.

### B.

The district court granted summary judgment in favor of WCI and the Union in the section 301 action on December 21, 1995, and this court affirmed in an unpublished opinion. *Mararri v. WCI Steel, Inc.*, 107 F.3d 871 (table), 1997 WL 63334 (6th Cir.1997). On September 30, 1996, the district court granted WCI's motion for summary judgment in the ADA case, holding that the plaintiff's termination was lawful because he had violated two provisions of the L.C.A. by "reporting to work after having consumed alcohol" and by testing positive for alcohol. The court also found that Mararri was not entitled to ADA protection because he was a current user of alcohol.

The plaintiff's arguments on appeal raise two questions: (1) whether, under the facts

of this case, the defendant's action in terminating Mararri's employment violated the ADA; and (2) whether the district court erred in holding that a provision of the ADA that excludes from the Act's protection individuals "currently engaging in the illegal use of drugs" applies to the current use of alcohol.

## II.

### A.

■ The plaintiff argues that because he neither drank nor was suspected of drinking alcohol on the job and was not intoxicated when he was tested on October 22, 1992, his discharge was solely because of his disability, alcoholism. According to Mararri, his conduct in merely reporting to work and testing positive for alcohol did not violate any policy of WCI.

The problem with this position is that it attempts to avoid the consequences of Mararri's violation of the L.C.A. Arguing that the district court committed error in its treatment of the L.C.A. issue, he contends that there is a genuine issue of material fact concerning whether he was under the influence of alcohol on October 22, 1992, and challenges the court's reliance on the fact that he had consumed alcohol "before going to work" in finding that he violated the L.C.A. Yet, the terms of the L.C.A. provide that Mararri could be discharged for testing positive for alcohol "at any level" while at work. The plaintiff admitted signing the second last chance agreement in 1991 and admitted that he knew he would be discharged if he tested positive for alcohol after reporting to work. Thus, his claims that the concentration of alcohol in his urine below the "legally intoxicated level" of O.R.C. § 4511.19(A)(4), that he did not exhibit any outward indicia of being intoxicated and that he was treated differently than non-alcoholic employees, do not raise factual issues with respect to the district court's reliance on the L.C.A. Admittedly, Mararri was subject to different treatment than some other employees, but this difference resulted from the terms of the L.C.A. rather than from any discriminatory animus. The L.C.A. did not require proof of intoxication; instead, a positive test result "at any level" was sufficient

grounds for termination. While this was not a company-wide policy, Mararri accepted this term when in 1991 he bargained to be reinstated to his position after violating the company-wide policy of not being intoxicated while at work.

Because Mararri's testing positive for alcohol is sufficient to support a finding that he violated the L.C.A., the court need not consider whether his consumption of "4 or 5 beers and a healthy dose of NyQuill" before reporting to work also violated the 1991 last chance agreement.

### B.

Only if the L.C.A. is invalid can the plaintiff prevail, because it is clear that WCI discharged him for violating the agreement, not for being an alcoholic.

Mararri relies on *Bruton v. SEPTA*, 6 ADD 406 (E.D.Pa.1994), and *Schmidt v. Safeway, Inc.*, 864 F.Supp. 991 (D.Or.1994), as establishing that WCI cannot rely on the L.C.A. as a basis for precluding his claim that his termination violated the ADA. Yet, neither *Bruton* nor *Schmidt* supports his contention. In *Bruton*, the court, in denying a motion to dismiss, said only that the plaintiff's claims were not barred as a matter of law on the basis that SEPTA claimed to have acted in accord with the provisions of a collective bargaining agreement. The *Bruton* court did not reach the merits of the claim and did not consider an L.C.A. that was itself a prior accommodation of an employee's alcoholism, such as the one at issue in the instant case.

The plaintiff points to the statement in *Schmidt* that "terminating an employee because of a symptom of [a] disability is tantamount to terminating him because of his disability[,]" *id.* at 1001. Under *Schmidt*'s facts this may have been a proper observation. We do not agree that it correctly states the general rule, but join with other courts, which have noted that, while the ADA "protects an individual's status as an alcoholic," merely being an alcoholic does not insulate one from the consequences of one's actions. *Flynn v. Raytheon*, 868 F.Supp. 383, 387 (D.Mass.1994); see also *Larson v. Koch Re-*

*fining Co.*, 920 F.Supp. 1000, 1004 (D.Minn. 1996) (purpose of the ADA is to protect against discrimination on the basis of a disability, not to protect an individual from the consequences of his conduct). Moreover, the facts found in *Schmidt* are significantly different from those presented here. In that case, a truck driver who tested positive for alcohol intoxication was immediately discharged, despite a physician's indication that the plaintiff was a good candidate for treatment. The court noted that "[t]he employer would have to first give the employee a reasonable opportunity to obtain treatment for the condition before terminating him." *Schmidt*, 864 F.Supp. at 998. Here, the plaintiff had already attended rehabilitation, which appeared to have been unsuccessful, and had previously been accommodated after testing positive for alcohol at work on two prior occasions.

Nevertheless, without supporting authority, Mararri continues to argue that his violation of the L.C.A. was a result of his alcoholism and that his termination was therefore unlawful because it resulted from his disability. We disagree. In *Maddox v. University of Tennessee*, 62 F.3d 843 (6th Cir.1995), after reviewing the language of the ADA and case law, this court held that it was appropriate to distinguish between a discharge on the basis of misconduct (in that case, drunken driving by a college football coach) and a discharge on the basis of a disability (alcoholism). Other courts have agreed. For instance, the Court of Appeals for the Ninth Circuit held that the ADA does not exempt alcoholics from reasonable rules of conduct, "and employers must be allowed to terminate their employees on account of misconduct, 'irrespective of whether the employee is handicapped.'" *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 (9th Cir.1995) (*quoting Little v. FBI*, 1 F.3d 255, 259 (4th Cir.1993)). See also *Canon v. Clark*, 3 AD Cases 1308, 1309 (S.D.Fla.1994) ("The ADA does not restrict the right of an employer to terminate an employee for alcohol use, even if any performance or behavior is related to the employees' alcoholism.").

The facts of the present case are substantially similar to those presented in *Golson–El v. Runyon*, 812 F.Supp. 558 (E.D.Pa. 1993), *aff'd*, 8 F.3d 811 (table), 3 AD Cases 1280 (3rd Cir.1993). In *Golson–El*, the court granted summary judgment to the employer where the employee, an alcoholic, violated the terms of an L.C.A. Ms. Golson–El had been provided with a written notice of her termination resulting from excessive absenteeism. She filed a grievance, contending that her absences were caused by her alcoholism. The employer reinstated her, and she entered into an L.C.A. with her employer and union, agreeing that she would be terminated if her unscheduled absences exceeded 3% of her scheduled work hours. Her absences exceeded the condition in the L.C.A., and she was terminated for violating the agreement. Noting its duty to construe the L.C.A. strictly, the court found that the plaintiff voluntarily entered into the agreement and rejected her claim that she was terminated because of her alcoholism. The court stated: "To attribute the firing to alcoholism is defective reasoning that skips the key step of reality, i.e., the prior accommodation to alcoholism by the Last Chance Agreement. Such defective reasoning would render Last Chance Agreements nugatory, because every breach would be attributed to a development connected to an alcoholic's problems." 812 F.Supp. at 561.

When the L.C.A. is examined under traditional contract principles, it is clearly valid. Mararri does not dispute that he reported to work under the influence of alcohol in 1991. Although WCI had just cause to terminate him at that time, it offered to reinstate him to his former position in exchange for his promise to comply with the terms contained within the 1991 L.C.A. Mr. Mararri voluntarily entered into the L.C.A. and elected to not continue his grievance. Although the condition of the L.C.A. providing that positive test results of any substance "at any level" could result in immediate discharge may seem harsh, it is beyond dispute that WCI could lawfully have terminated Mararri instead of giving him another chance. The terms that Mararri agreed to in the L.C.A. were thus supported by valuable consideration.

**C.**

Although the issue was not raised in the briefs, in response to the court's ques-

tioning at oral argument regarding the date the L.C.A. was signed, Mararri's counsel indicated that WCI had an affirmative obligation to advise Mararri that terms of the L.C.A. (which was signed before the effective date of the ADA) might impinge on his rights under the ADA. Yet, nothing within the ADA requires an employer to provide notice of an employee's rights under the statute. Other federal statutes, such as the Consolidated Omnibus Budget Reconciliation Act of 1989 (COBRA), 29 U.S.C. §§ 1161–1168, for instance, specifically provide that notice of rights must be provided. 29 U.S.C. §§ 1166(a)(2), 1166(a)(4), and 1166(c). Even where notice of rights is statutorily mandated, imposition of penalties is usually discretionary, and "[m]any courts have refused to impose any penalty at all . . . in the absence of a showing of prejudice or bad faith." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir.1994). There is absolutely nothing in the record before us to indicate bad faith or prejudice. Mararri had been terminated for cause when the current L.C.A. was entered into. He understood the terms of the agreement and was not prejudiced by having it enforced in accordance with its terms. The passage of the ADA did not change the terms or create a right to violate those terms. The fact that after the ADA became the law an employer could no longer fire an employee solely because the employee is an alcoholic in no way changed the plaintiff's obligations under the agreement previously entered into. We can find no basis for holding that WCI acted in bad faith by not notifying Mararri of the enactment of the ADA.

#### D.

■ Even if we should construe the L.C.A. as a "waiver," nothing in the circumstances surrounding its execution leads to the conclusion that it is invalid. To the extent that Mararri, in signing the L.C.A., agreed to be bound by different terms than those applicable to other employees, he made this concession in return for WCI's reinstating his employment. Any settlement of federal statutory rights must be agreed to by a claimant voluntarily and knowingly. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1022 n. 15, 39 L.Ed.2d 147

(1974). The L.C.A. effected a settlement of his grievance and the record before us indicates that Mararri's consent to the settlement was completely "voluntary and knowing." *Id.*

This court has held that waivers of employee rights are to be examined under normal contract principles unless overreaching or exploitation is inherent in the situation. *Raczak v. Ameritech Corp.*, 103 F.3d 1257, 1268 (6th Cir.1997). See also *Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir. 1989) ("Public policy does not prohibit an otherwise valid release from acting as a waiver of a federal statutory cause of action," and "waivers of federal statutory rights have been upheld in numerous contexts."); *Runyan v. National Cash Register Corp.*, 787 F.2d 1039, 1045 (6th Cir.1986) (a court should apply principles that encourage "amicable settlement of honest differences" in considering whether a settlement and release of a federal statutory right is valid).

The L.C.A. was a valid settlement of a grievance that resulted in the plaintiff's returning to his job after he had been terminated for good cause. He was represented by the Union, and there is no evidence of overreaching or exploitation.

#### III.

■ We agree with the plaintiff that the district court incorrectly ruled that his "current use of illegal drugs" disqualified him from ADA protection. WCI cites *Grimes v. U.S. Postal Service*, 872 F.Supp. 668 (W.D.Mo.1994), and *Wormley v. Arkla, Inc.*, 871 F.Supp. 1079 (E.D.Ark.1994), for the proposition that current users of alcohol are not protected by the ADA. However, both of those cases dealt with current illegal users of drugs, rather than users of alcohol. Moreover, neither case indicated that alcoholics were excluded from ADA protection. The statutory language relied upon by the district court and WCI provides that "the term 'qualified individual with a disability' shall not include any employee or applicant who is currently engaging in the illegal use of drugs . . . ." 42 U.S.C. § 12114(a). The ADA further provides that "[t]he term 'illegal use of drugs' means the use of drugs, the

possession or distribution of which is unlawful under the Controlled Substances Act[,]" 42 U.S.C. § 12111(6)(A), and that "[t]he term 'drug' means a controlled substance, as defined in schedules I through V of section 202 of the Controlled Substances Act." 42 U.S.C. § 12111(6)(B). Thus, the plain language of § 12114(a) does not exclude alcoholics from ADA coverage because alcohol is not a "drug" within the meaning of the statute. The statute treats drug addiction and alcoholism differently, and an alcoholic is not automatically excluded from ADA protection because of current use of alcohol. See *Flynn*, 868 F.Supp. at 386 n. 6 ("Congress did not exclude alcoholics from ADA protection as it did current illegal drug users.").

Although the district court relied on its erroneous interpretation of § 12114(a) to support its alternate ground for granting judgment to WCI, this error does not require reversal. As indicated earlier, the district court correctly upheld Mararri's discharge for violating the terms of a valid L.C.A.

### CONCLUSION

The Americans with Disabilities Act prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). The Act also requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability...." 42 U.S.C. § 12112(b)(5)(A). There is no dispute that alcoholism is a disability within the protection of the ADA. We conclude, however, that the district court properly distinguished between Mararri's conduct (violating the terms of the L.C.A.) and his alcoholic condition. Thus, he was not terminated for being an alcoholic.

Upon de novo review of the entire record, and after carefully considering the plaintiff's arguments, we have determined that the district court correctly granted summary judgment in favor of the defendant. Accordingly, the judgment is **AFFIRMED**.