816 A.2d 1052 (2003)
358 N.J. Super. 1
Horace WATSON, Petitioner-Appellant,
v.
CITY OF EAST ORANGE, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 2, 2001.
Decided October 30, 2001.
Rabner, Allcorn, Baumgart & Ben-Asher, attorneys for appellant (David H. Ben-Asher and Fredda Katcoff, on the brief).
McCormack & Matthews, attorneys for respondent City of East Orange (Thomas M. McCormack, of counsel; Joseph M. Wenzel, on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent Merit System Board (Elizabeth M. Laufer, Deputy Attorney General, on statement in lieu of brief).
Before Judges EICHEN and LINTNER.
The opinion of the court was delivered by EICHEN, J.A.D.
This is an appeal from a final decision of the Merit System Board removing Horace Watson from his position as a police officer in the City of East Orange. The Board accepted and adopted the findings of fact and conclusions of the Administrative Law judge (ALJ) that removal of petitioner is warranted because he violated the terms of a Last Chance Agreement entered into with the East Orange Police Department. The Last Chance Agreement had its genesis in an off-duty incident that occurred on May 23, 1996 in which petitioner, while *1053 under the influence of alcohol, discharged rounds of ammunition from his service revolver. Some of the rounds were directed toward a residence on the Upsala College campus. As a result of this incident, petitioner was issued a Preliminary Notice of Disciplinary Action charging him with insubordination, conduct unbecoming, neglect of duty and failure to perform duties, among other charges.
The record reflects that petitioner had a history of alcohol abuse.[1] After acknowledging that petitioner had an alcohol abuse problem, petitioner's attorney proposed an agreement which would permit appellant to seek professional assistance for the problem in lieu of proceeding with the disciplinary proceeding. The East Orange Police Department (EOPD) agreed to "afford [petitioner] a final opportunity to comply with the Rules and Regulations of the EOPD and to assist him in recovering from substance abuse." Accordingly, the Last Chance Agreement was prepared and, on December 17, 1996, was signed by the parties. The agreement provided, in relevant part, as follows:
WHEREAS, Horace Watson, was hired by the East Orange Police Department (hereinafter "EOPD"), as a police officer on February 4, 1991; and
WHEREAS, Horace Watson, has admitted that his use of alcohol has impeded his ability to perform the duties of a patrol officer and that his continued use of alcohol poses a threat to himself and to others; and
WHEREAS, Horace Watson, has agreed that, in lieu of termination, his return to work and his continued employment by EOPD is subject to the provisions of this Last Chance Agreement; and
WHEREAS, EOPD has agreed to offer this Last Chance Agreement to Horace Watson to afford him a final opportunity to comply with the Rules and Regulations of the EOPD and to assist him in recovering from substance abuse.
NOW, THEREFORE, IT IS AGREED AS FOLLOWS:
1. Horace Watson agrees to a ninety (90) day suspension.
2. During said ninety (90) day suspension, Horace Watson will enroll in an approved program for alcohol recovery.
3. EOPD will permit Horace Watson to return to work when each of the following conditions has been met:
A. Horace Watson will enroll in an in-patient program for alcohol recovery. The in-patient program selected will be mutually acceptable to EOPD and to Horace Watson.
B. Horace Watson will satisfactorily complete the (in-patient program....
C. Following his release from the in patient program, Horace Watson will be counseled by a licensed substance abuse counselor. The substance abuse counselor will be mutually acceptable to EOPD and to Horace Watson. The counselor will provide periodic reports to EOPD regarding Horace Watson.
D. EOPD will determine, in its sole discretion, when conditions A through C above have been met.
* * * *
6. Horace Watson agrees that his employment will be terminated immediately if he violates any of the provisions of this Last Chance Agreement. Horace Watson further agrees that nothing in *1054 this Last Chance Agreement supersedes the right of EOPD to terminate his employment in accordance with the laws, rules, and regulations applicable to his employment.
Thereafter, petitioner was notified that his suspension would commence on January 5, 1997 and would run ninety working days through May 20, 1997. On May 5, 1997, petitioner enrolled in the Outpatient Chemical Dependency Program at the Charter Behavioral Health System of New Jersey (Charter).[2] On May 19, 1997, Donna Hayden, a chemical dependence counselor, wrote a letter indicating that petitioner would attend the program three times per week for the next three weeks, depending on the patient's progress. On May 30, 1997, Hayden wrote a second letter indicating the days that petitioner had attended the program in May, anticipating that he would attend one time per week for the next eight weeks depending upon his progress. On May 30, 1997, John O'Donnell, M.D., issued a written verification that petitioner had been a patient at Charter from May 5, 1997 to the time of the writing and projected his discharge date to be June 30, 1997. The letter further indicated that he "will be ready to return to work on 6/2/97."
On May 21, 1997, petitioner was served with a Preliminary Notice of Disciplinary Action charging him with "Other Sufficient Cause for violation of the Last Chance Agreement entered into on December 17, 1996." The Notice indicated that petitioner had violated the agreement by failing "to attend and complete an alcohol treatment program before May 21, 1997."
Following a police department disciplinary hearing on June 10, 1997, petitioner was removed from his position on July 2, 1997.[3] Thereafter, petitioner filed an appeal with the Board and the matter was transmitted to the Office of Administrative Law as a contested case. The matter was then tried before the ALJ. On November 16,1999, the ALJ issued his initial decision upholding petitioner's removal from his position as a police officer.
The ALJ found that the Last Chance Agreement "is ambiguous with respect to the deadline by which appellant had not only to enroll in an approved out-patient alcohol program, but to successfully complete it." Nevertheless, the ALJ concluded that petitioner had violated the agreement. Relying on petitioner's stipulations in the agreement, including petitioner's admission "that his use of alcohol has impeded his ability to perform the duties of a patrol officer and that his continued use of alcohol poses a threat to himself and to others," the ALJ stated:
[T]he parties intended that within a reasonable time from enrolling in [an] approved out-patient program, [petitioner] would provide evidence of satisfactory completion. Since [petitioner] has not provided evidence that he ever satisfactorily completed the program at Charter, he is in violation of the LCA [Last Chance Agreement]. The LCA states clearly that [petitioner] "agrees that his employment will be terminated if he violates any provisions of the LCA."
On appeal, petitioner makes the following arguments:
POINT I
WATSON DID NOT BREACH THE LAST CHANCE AGREEMENT.
A. THE LAST CHANCE AGREEMENT DID NOT REQUIRE WATSON *1055 TO COMPLETE TREATMENT BY A FIXED DATE.
B. UNDER THE ALJ'S INTERPRETATION OF THE LAST CHANGE AGREEMENT, THE DEPARTMENT'S ISSUANCE OF A DISCIPLINARY NOTICE AGAINST WATSON ON MAY 21, 1997 WAS STILL IMPROPER.
C. ASSUMING, ARGUENDO, THAT WATSON WAS REQUIRED TO SATISFACTORILY COMPLETE TREATMENT BY MAY 21, 1997, HIS SATISFACTORY COMPLETION OF TREATMENT LESS THAN TWO WEEKS LATER WAS NOT A MATERIAL BREACH OF THE AGREEMENT.
POINT II
ASSUMING ARGUENDO, THAT WATSON BREACHED THE LAST CHANCE AGREEMENT, THE PENALTY OF REMOVAL WAS UNWARRANTED.
Essentially, petitioner contends that he complied with the Last Chance Agreement. He argues that he was enrolled in an alcohol recovery program during the ninety-day suspension period as required by the Last Chance Agreement and that because the agreement did not expressly provide for a deadline for his satisfactory completion of such program during the suspension period, he did not breach the agreement, and the police department was not free to institute disciplinary action against him. He claims he completed the primary care portion of the program by June 2, 1997 and was medically certified to return to work less than a month after he began rehabilitation. Therefore, he maintains, he did not violate the agreement and his removal was arbitrary, capricious and unreasonable.
Our scope of review is limited. We will only reverse the decision of an administrative agency if that decision is "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980); Campbell v. Department of Civil Service, 39 N.J. 556, 566, 189 A.2d 712 (1963). The question to be asked is whether the agency's findings could have been reasonably reached in light of the record taken as a whole. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965).
Initially, we note there is no proof from an authorized representative of Charter that petitioner ever actually successfully completed the program. In addition, while the Last Chance Agreement does not specifically provide a time limitation for completion, but merely states that the petitioner was to enroll within the ninetyday suspension period, it is reasonably inferable from all of the circumstances that petitioner was required to enroll in a recovery program as soon as reasonably possible after signing the agreement and to complete the program before he could return to work. The record reflects that petitioner was to report back to his superior in writing within seven days of their meeting on January 3, 1997 as to which program he had selected. This was a clear indication that he was to enroll in a program at the earliest possible time. When, in January, he reported that he was having trouble finding a program, he was told to contact his primary care physician for advice. But, petitioner never checked back with his supervisors until shortly before his suspension was to end, when he advised Internal Affairs he had enrolled in a program on May 5, 1997.
In construing a provision of a contract, it is entirely appropriate to examine the contract as a whole as well as the surrounding circumstances and the situation of the parties, even when the contract *1056 is not ambiguous. See Great Atl. & Pac. Tea v. Checchio, 335 N.J.Super. 495, 501, 762 A.2d 1057 (App.Div.2000). Applying these principles here, the Merit System Board, by adopting the ALJ's findings and conclusions, concluded petitioner breached the agreement and imposed removal as the appropriate sanction.
Having thoroughly considered the record and petitioner's arguments in light of applicable law, we see no basis to reject the Board's determination that the charge had been sustained and that petitioner's removal was required. R. 2:11 3(e)(1)(E) and (D).
To the extent that we have not addressed any arguments advanced by petitioner presented in his brief, we conclude they are without sufficient merit to require discussion in a written decision. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] The undisputed medical records presented at the hearing reflect several failed attempts at rehabilitation.
[2] Charter is the successor to Fair Oaks Hospital.
[3] Following Dr. O'Connell's letter, petitioner had been permitted to return to work pending his hearing on June 10, 1997.