815 A.2d 956

HORACE WATSON, APPELLANT–APPELLANT, v. CITY OF EAST ORANGE, RESPONDENT–RESPONDENT.

Argued September 23, 2002—Decided February 24, 2003.

*David H. Ben–Asher,* argued the cause for appellant (*Rabner, Allcorn, Baumgart & Ben–Asher,* attorneys; Mr. *Ben–Asher* and *Fredda G. Katcoff,* on the brief).

*J.S. Lee Cohen,* argued the cause for respondent (*DeCotiis, FitzPatrick, Gluck & Cole,* attorneys).

*Elizabeth M. Laufer,* Deputy Attorney General, submitted a letter in lieu of brief on behalf of the *Merit System Board* (*David Samson,* Attorney General of New Jersey, attorney).

PER CURIAM.

We affirm the judgment below, substantially for the reasons expressed in the opinion of the Appellate Division, reported at 358 *N.J.Super.* 1, 816 *A.*2d 1052 (2001). We add only these brief comments to amplify that opinion.

While under the influence of alcohol, Patrolman Horace Watson (petitioner) fired his service revolver in the direction of a residence on the campus of then-existing Upsala College. Investigators found nine spent shell casings traceable to petitioner's gun. Fortunately, no one was injured.

Rather than discharge petitioner, the City of East Orange (respondent) showed leniency by deciding to suspend him with conditions. With the assistance of counsel, petitioner negotiated the terms of his suspension, which the parties then memorialized in a so-called "last chance" agreement (LCA). Consistent with that agreement, respondent suspended petitioner for ninety working days, beginning January 5, 1997, and concluding May 20, 1997. The LCA reflects unambiguously that respondent had agreed that petitioner could return to work only when he completed a mutually acceptable program for alcohol recovery. Petitioner did not begin attending such a program until May 5, 1997, just fifteen days before his suspension was scheduled to end. Following a departmental hearing held after the suspension period had expired, respondent discharged petitioner.

Petitioner appealed to the Merit System Board (Board), which in turn transmitted the matter as a contested case to an administrative law judge (ALJ). The ALJ upheld the discharge, finding that petitioner had not complied with his supervisor's previous directive to inform the department by January 10, 1997, of the specific recovery program that he had selected. Implicit in that finding is that petitioner was obligated to identify and choose a program by that date, an obligation he did not fulfill. Although petitioner did enroll in a program late in the suspension period, the ALJ found that he did not complete it "within the period of suspension or within a reasonable time from the date of enrollment." To date, petitioner has provided no evidence that he has completed the required program.

The Board adopted the ALJ's findings that petitioner had violated the LCA and that dismissal was the appropriate discipline. The Appellate Division affirmed. We agree with the Appellate Division that under the limited standard of review applicable in this setting, see *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965), we have no basis to overturn the Board's determination.

Contrary to the dissent's suggestion, our disposition does not require us to re-write the parties' agreement. The LCA attaches three conditions to petitioner's suspension in lieu of discharge. Condition A is that petitioner "will enroll in a program for alcohol recovery." A subset of that condition is that "[t]he program selected will be mutually acceptable to [respondent] and to [petitioner]." Conditions B and C respectively are that petitioner "will satisfactorily complete the program" and that "[f]ollowing his release from the program, [petitioner] will be counseled by a licensed substance abuse counselor." Qualifying all of the foregoing is this critical language, not emphasized by the dissent: "[Respondent] will determine *in its sole discretion*, when conditions A through C above have been met." (Emphasis added).

■ Respondent obviously was not satisfied with the slowness by which petitioner identified and enrolled in a suitable program, his failure to keep respondent abreast of his progress, and his failure to complete the program itself. Given the dangerousness of petitioner's initial conduct, respondent acted in the public interest by requiring petitioner to comply with both the letter and spirit of the LCA. Under those circumstances, we are persuaded that the LCA grants respondent the discretion to deem petitioner in breach of the agreement, justifying his dismissal.

■ Even if we were to assume that the LCA does not afford respondent that degree of discretion, our disposition would be the same. That petitioner was expected to enroll in and complete a recovery program in a timely fashion is clear from the LCA's text and its surrounding circumstances. As found by the ALJ and as accepted by the Board, petitioner simply did not perform as contemplated by the parties, warranting his discharge. A contrary conclusion likely would chill employers from entering into last chance agreements to the detriment of future employees. See *Golson–El v. Runyon*, 812 *F.Supp.* 558, 561 (E.D.Pa.) (construing last chance agreements in favor of employers because to do

otherwise would "discourage their use by making their terms meaningless"), *aff'd*, 8 *F*.3d 811 (3d Cir.1993).

The judgment of the Appellate Division is affirmed.

LONG, J., dissenting.

In 1996, the City of East Orange chose, for its own reasons, to enter into a Last Chance Agreement with Patrolman Horace Watson, an employee whose conduct in firing his service revolver, while drunk, plainly would have justified the termination of his employment. The agreement is set forth in full in the decision of the Appellate Division. *Watson v. City of East Orange*, 358 *N.J.Super.* 1, 816 *A*.2d 1052 (2001). In relevant part it provides:

NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

1. Horace Watson agrees to a ninety (90) day suspension.

2. During said ninety (90) day suspension, Horace Watson will enroll in an approved program for alcohol recovery.

3. EOPD will permit Horace Watson to return to work when each of the following conditions has been met:

   A. Horace Watson will enroll in a program for alcohol recovery. The program selected will be mutually acceptable to EOPD and to Horace Watson.

   B. Horace Watson will satisfactorily complete the program. Horace Watson agrees to sign all documents necessary or required to participate in the program. Horace Watson further agrees that all records, reports or other documents relating to his counseling and treatment by the program, to the extent provided by law, will be disclosed to EOPD at its request.

   C. Following his release from the program, Horace Watson will be counseled by a licensed substance abuse counselor. The substance abuse counselor will be mutually acceptable to EOPD and to Horace Watson. The counselor will provide periodic reports to EOPD regarding Horace Watson.

   D. EOPD will determine in its sole discretion, when conditions A through C above have been met.

   . . . .

6. Horace Watson agrees that his employment will be terminated immediately if he violates any of the provisions of this Last Chance Agreement. Horace Watson further agrees that nothing in this Last Chance Agreement supersedes the right of EOPD to terminate his employment in accordance with the laws, rules, and regulations applicable to his employment.

The agreement is straightforward. Watson consented to a 90–day suspension, (¶ 1); he agreed to *enroll* in an alcohol rehabilitation program, (¶ 2); he accepted three conditions precedent to his

return to work: the program had to be approved by the city, (¶ 3A); he had to cooperate with the program and share his treatment records with the city, (¶ 3B); and he had to agree to participate in post-program counseling with respect to which reports would be made to the city. (¶ 3C). Satisfaction of those three conditions was to be determined solely within the discretion of the city. (¶ 3D). If Watson violated the agreement or any other law, rule, or regulation governing his employment, he could be terminated. (¶ 6).

Watson enrolled in an alcohol rehabilitation program within the suspension period. He was fired because he did not complete the program within 90 days. It certainly behooved Watson to join a program early so that he would not have to suffer an extension of his suspension but the agreement simply did not compel him to do so.

In reaching an opposite conclusion, the Merit System Board and the Appellate Division subscribed to the view that the Last Chance Agreement was ambiguous, thus warranting resort to surrounding circumstances to glean its true meaning. However, a document that is not susceptible to more than one fair interpretation is not ambiguous. *Inter Medical Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 *F.*3d 446, 457 (3d. Cir.1999), *cert. denied*, 528 *U.S.* 1076, 120 *S.Ct.* 791, 145 *L.Ed.*2d 667 (2000); *M.J. Paquet, Inc. v. New Jersey Dep't of Transp.*, 171 *N.J.* 378, 396, 794 *A.*2d 141 (2002) (citation omitted). Under our law, when the terms of a contract are clear and unambiguous, there is no room for construction and the court must enforce those terms as written. *Kampf v. Franklin Life Ins. Co.*, 33 *N.J.* 36, 43, 161 *A.*2d 717 (1960) (citations omitted); *M.J. Paquet, Inc., supra*, 171 *N.J.* at 396, 794 *A.*2d 141; *City of Orange Township v. Empire Mortgage Servs., Inc.*, 341 *N.J.Super.* 216, 224, 775 *A.*2d 174 (App.Div.2001) (citation omitted). To be sure, surrounding circumstances may be resorted to even when the contract is not ambiguous

to secure light by which its actual significance may be measured. Such evidence is adducible simply as a means of interpreting the writing,—not for the purpose of modifying its terms, but to assist in determining the meaning of what has been

said. So far as the evidence tends to show, not the sense of the writing, *but an intention wholly unexpressed* [in the writing], it is irrelevant.

[*Newark Publishers' Association v. Newark Typographical Union,* 22 *N.J.* 419, 427, 126 *A.*2d 348 (1956) (citing *Atlantic Northern Airlines v. Schwimmer,* 12 *N.J.* 293, 302, 96 *A.*2d 652 (1953)) (emphasis added).]

Put another way, where a contract says "black", the parties cannot resort to surrounding circumstances to substitute "white." That is what has occurred here. The contract clearly provided that Watson had to "enroll" in a rehabilitation program during his 90–day suspension and that he could not return to work until he had successfully completed it. In reaching a contrary conclusion as to the meaning of the contract, the Court has substituted the word "complete" for the word "enroll," in contravention of our well-established contract law jurisprudence.

What most likely occurred here is that the City had a change of heart about the Last Chance Agreement. Whether that was due to a new administration or an attack of good judgment is un-known. Either way, such a change of heart cannot trump a clear contract to the contrary. Watson is thus entitled to a remedy.

The difficulty in formulating a fair remedy is obvious. Some years have passed, Watson lost his insurance when he was fired and never finished the rehabilitation program, and issues of back pay and counsel fees are lurking at the perimeter of the case. Limning a remedy that is fair to all parties will be very hard. That is likely what impelled the Appellate Division and the majority here to accept an interpretation of the Last Chance Agreement that is wholly contrary to its language. But the difficulty in framing a remedy is not a warrant for denying it.

I would reverse and remand the case to the Merit System Board for the formulation of an appropriate remedy for the City's violation of its contract with Watson.

Justices ZAZZALI and ALBIN join in this dissent.

*For affirming*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO and Judge KING, temporarily assigned—4.

*For reversing and remanding*—Justices LONG, ZAZZALI and ALBIN—3.