NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4284-19

C.L.,

      Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES,

      Respondents-Respondents,

and

BERGEN COUNTY
BOARD OF SOCIAL SERVICES,

      Respondent.

**APPROVED FOR PUBLICATION**

**October 17, 2022**

**APPELLATE DIVISION**

Submitted September 28, 2022 – Decided October 17, 2022

Before Judges Whipple, Mawla, and Marczyk.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Fink Rosner Ershow-Levenberg Marinaro, LLC, attorneys for appellant (Linda S. Ershow-Levenberg, on the briefs).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MARCZYK, J.S.C., t/a

C.L. appeals from a Final Agency Decision (FAD) from the Division of Medical Assistance and Health Services (DMAHS) denying her request for Medicaid benefits due to excess resources. Specifically, DMAHS determined an annuity C.L. purchased, which she understood to be irrevocable, was revocable and counted as a resource, thereby disqualifying her from Medicaid benefits. Following our review of the record and applicable legal principles, we reverse.

I.

C.L. purchased an annuity contract with the Croatian Fraternal Union of America (CFUA) as part of a spend-down plan to qualify for Medicaid benefits. The annuity contract provides C.L. had a right to rescind the contract within ten days of receipt if she wanted to receive a complete refund of her money.[1] The contract also states after the ten-day rescission period, it: "(1) is

---

[1] As part of her application, signed and dated May 20, 2019, C.L. signed an acknowledgements page which stated in part, "I understand that this annuity is non-transferrable, non-assignable, non-commutable, non-surrenderable, and

irrevocable and immediate; (2) may not be transferred, assigned, surrendered, or commuted; and (3) has no cash or loan value" (Irrevocability Clause). The dispute in this matter arises from DMAHS's interpretation of language contained in the annuity contract's application, which is incorporated by reference into the contract. The provision, at issue, states the parties "understand . . . only the National President or the National Secretary/Treasurer of the [CFUA] may, in writing, make or change the contract or waive any of its rights or requirements" (Amendment Clause).

In June 2019, C.L. applied for Medicaid benefits through the Bergen County Board of Social Services (BCBSS). On September 23, 2019, BCBSS denied her application on the basis her resources exceeded the maximum required under Medicaid law because of the CFUA annuity. Thereafter, C.L.

---

permanently irrevocable." On June 7, 2019, a letter from CFUA addressed to C.L., stated in part:

> Please be advised that your single life fixed benefit annuity . . . is <u>irrevocable</u>. It may not be transferred, assigned, surrendered, or commuted. Furthermore, it <u>has zero cash or loan value</u> . . . . Please know that the <u>[CFUA] will deny any request to change any . . . terms</u> or conditions of the contract, once the contract has been issued.

On June 11, 2019, the broker sent a letter to C.L., which included the annuity contract. The letter reiterated that the annuity is "<u>irrevocable</u>, non-assignable, and offers <u>zero cash or loan value</u>." (Emphasis added).

filed for a fair hearing before DMAHS, which transmitted the matter to the Office of Administrative Law (OAL) as a contested case.

The primary issue before the administrative law judge (ALJ) was whether BCBSS's decision to count the CFUA annuity as a resource was correct. A BCBSS representative testified that in reaching its conclusion, BCBSS focused on the similarities between C.L.'s application and a prior case from Ocean County involving M.M., in which the applicant also purchased an annuity from the CFUA.[2] Edward Pazo, CFUA's president, testified regarding M.M.'s case and the annuity contract at issue in this matter.

M.M.'s annuity contract had language identical to C.L.'s contract regarding irrevocability and the Amendment Clause. M.M. applied for a CFUA annuity, but later asked the CFUA to extend the payment by one month because there was a calculation error in the initial application. Pazo testified that because of the calculation error, he permitted the length of payment to be extended by one month, but the CFUA did not revoke the contract nor did the annuitant ever ask for the money back. He testified "for processing purposes,

---

[2] M.M. v. Div. of Med. Assistance & Health Servs., No. HMA 1057-19, final decision (June 19, 2019) (slip op.) http://njlaw.rutgers.edu/collections/oal/final/hma01057-19_1.pdf.

we assigned it a new contract number" to keep track of the annuity. He emphasized M.M.'s contract remained irrevocable without any cash surrender.[3]

On March 17, 2020, the ALJ affirmed BCBSS's decision based on the Amendment Clause and the CFUA amending the annuity contract in M.M.'s case. In short, the ALJ determined the contract was revocable. On March 25, 2020, C.L. filed timely exceptions primarily based on an injunction entered against DMAHS in federal court concerning another CFUA annuitant and involving the same Irrevocability and Amendment Clauses.[4] On June 16, 2020, DMAHS entered a FAD, which affirmed the ALJ's decision. Specifically, the FAD noted the annuity contract at issue was a revocable contract thereby rendering it a resource. On July 28, 2020, C.L. also filed for a preliminary injunction in federal court and subsequently filed this appeal on July 29, 2020. On September 10, 2020, with the consent of the Attorney

---

[3] Pazo believed the contract referenced and incorporated the Amendment Clause to comply with regulatory changes and governmental rulings that would require the CFUA to amend its contracts.

[4] The federal court specifically enjoined DMAHS from "continuing to enforce; or directing their employees, subordinate, attorneys, and assigns to enforce; a policy that an annuity contract issued by the [CFUA], which is subject to a provision that the 'National President or Secretary/Treasurer of the [CFUA] may, in writing, make or change a contract or waive any of its rights or requirements,' be counted as an available resource, due to the presence of that term." Cushing v. Jacobs, No. 20-cv-130, 2020 U.S. Dist. LEXIS 51351, at *11 (D.N.J. Mar. 25, 2020).

General, this appeal was stayed until December 2020. The federal court never addressed the request for the injunction and C.L. proceeded with this appeal.[5]

## II.

C.L. argues when an annuitant cannot liquidate an annuity, it cannot be treated as a resource. 20 C.F.R. 416.1201(a). Further, after the ten-day "free look" period, she did not have the unilateral right to revoke the annuity contract or demand a return of the premium. C.L. asserts there was nothing in the Amendment Clause or any other part of the contract that gives C.L. the right to revoke the annuity. Although the application indicates the president or treasurer has the power to amend the contract, that does not confer any legal rights upon C.L. She contends, "at most [the clause is] merely a notice . . . for [regulatory] compliance purposes."

C.L. argues the CFUA issued the annuity contract, including the Amendment Clause, with the approval of the State Division of Banking and Insurance (DOBI) and sold it as an "irrevocable annuity contract." DMAHS ignored this fact and mistakenly treated the contract as if it were revocable. Finally, C.L. contends DMAHS's reliance on M.M.'s case is wholly inapposite,

---

[5] C.L. passed away while this appeal was pending.

because the annuitant there did not receive her money back and instead received a modified annuity.[6]

III.

We begin by addressing our standard of review and general governing legal principles. This court's review of DMAHS's determination is ordinarily limited. Barone v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 210 N.J. Super. 276, 285 (App. Div. 1986) ("We must give due deference to the views and regulations of an administrative agency charged with the responsibility of implementing legislative determinations."); see also Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) ("It is settled that [a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.") (alteration in original) (citations and internal quotation marks omitted). "Where [an] action of an administrative agency is challenged, a presumption of reasonableness attaches to the action of an administrative agency[,] and the party who challenges the validity of that action has the burden of showing that it was arbitrary, unreasonable or capricious." Barone, 210 N.J. Super. at 285 (citation and internal quotation

---

[6] C.L. further contends DMAHS's FAD violated the federal injunction and violated the standards for rulemaking.

marks omitted). "Delegation of authority to an administrative agency is construed liberally when the agency is concerned with the protection of the health and welfare of the public." Ibid. Thus, ordinarily our task is limited to deciding:

> (1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 339 (App. Div. 2009) (citation omitted).]

Nevertheless, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affs. of Dep't of L. & Pub. Safety, 64 N.J. 85, 93 (1973)). "[If] an agency's determination . . . is a legal determination, our review is de novo." L.A. v. Bd. of Educ. of City of Trenton, Mercer Cty., 221 N.J. 192, 204 (2015) (citation omitted).

"We do not . . . simply rubber stamp the agency's decision." Paff v. N.J. Dep't of Lab., 392 N.J. Super. 334, 340 (App. Div. 2007) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). Instead, we will "intervene . . . in those . . . circumstances in which an agency action is clearly inconsistent with its statutory mission or other state policy." In re Musick, 143 N.J. 206, 216 (1996). Since the issue before us presents a legal question involving an interpretation of an annuity contract, we are not bound by DMAHS's decision, and our review is de novo.

## IV.

The issue presented is whether, despite the express language in the annuity contract concerning irrevocability, the Amendment Clause renders the annuity revocable and, therefore, a resource[7] under New Jersey's Medicaid provisions.

In interpreting a contract, we are guided by well-established principles. "A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner." Hardy ex rel. Dowdell v. Abdul–Matin,

---

[7] A resource is defined as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). Similarly, New Jersey regulations define a resource as "any real or personal property which is owned . . . and which could be converted to cash . . . ." N.J.A.C. 10:71–4.1(b).

198 N.J. 95, 103 (2009). If we find the terms "are clear and unambiguous, there is no room for construction and the court must enforce those terms as written," in addition to giving them "'their plain, ordinary meaning.'" Watson v. City of E. Orange, 175 N.J. 442, 447 (2003) (Long J., dissenting); Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)).

Importantly, "[a] contract 'should not be interpreted to render one of its terms meaningless.'" Porreca v. City of Millville, 419 N.J. Super. 212, 233 (App. Div. 2011) (quoting Cumberland Cty. Improvement Auth. v. GSP Recycling Co., 358 N.J. Super. 484, 497 (App. Div. 2003)). Further, when interpreting a contract, "[s]o long as it leads to a result in harmony with the contracting parties' overall objective a specific, defined term controls a general, undefined term." Gil v. Clara Maass Med. Ctr., 450 N.J. Super. 368, 378 (App. Div. 2017). Therefore, when both general language of a contract and specific language address the same issue, the specific language controls. See, e.g., Homesite Ins. Co. v. Hindman, 413 N.J. Super. 41, 48 (App. Div. 2010) (referencing "the well-recognized rule of construction that when two provisions dealing with the same subject matter are present, the more specific provision controls over the more general").

Guided by these standards, we determine the annuity was irrevocable and should not be considered a resource. To qualify for Medicaid benefits, an individual may not have more than $2,000 in countable assets. Annuities purchased by Medicaid applicants are not countable assets if they meet certain criteria, including irrevocability. See 42 U.S.C. § 1396p(c)(1)(G)(ii). 42 U.S.C. § 1396p(c)(1)(G)(ii) provides that a purchased annuity is considered an "asset" unless the annuity is (1) irrevocable and nonassignable, (2) actuarially sound, and (3) provides for payments in equal amounts during the term or the annuity, with no deferral or balloon payments.

Here, the annuity contract provides:

> **Irrevocable.** This contract: (1) is irrevocable and immediate (2) may not be transferred, assigned, surrendered or commuted; and (3) has not cash or loan value. The Annuitant may not be changed. No change maybe be made: (1) in the Benefit Period; or (2) in the frequency for payment.

The Amendment Clause language in the application, incorporated by reference into the contract, states: "[o]nly the National President or the National Secretary/Treasurer of the [CFUA] may, in writing, make or change the contract or waive any of its rights or requirements."[8] DMAHS relies on this

---

[8] Although not dispositive of our holding in this matter, we note N.J.A.C. 11:4-43.1(a) provides "[t]his subchapter . . . [sets] forth standards and requirements that individual annuity contract forms . . . issued . . . in this State

Amendment Clause, coupled with the testimony of the CFUA president that he permitted an annuitant to amend an annuity because of a miscalculation, for the proposition that the entire annuity contract is revocable. We are not persuaded by this argument.

We conclude the CFUA annuity contract is unambiguous and that it is irrevocable. The plain, ordinary meaning of the annuity contract language ("irrevocable," "may not be transferred, assigned, surrendered[,] or commuted," no "cash . . . value") makes clear the CFUA intended for the annuity to be irrevocable and it was reasonable for C.L. to view it as such. Whether the CFUA president properly allowed an annuitant on a prior occasion to amend an annuity is not germane to our analysis. To adopt DMAHS's argument would require us to ignore the unambiguous language of the contract concerning irrevocability. We decline to do so because it would render the irrevocable provisions irrelevant; a result we should avoid. Porreca,
_____
are required to satisfy in order to obtain approval from the Commissioner." Subchapter 43 generally addresses "Individual Annuity Contract Form Standards." N.J.A.C. 11:4-43.3(f) provides an annuity contract form "may contain language that permits the insurer unilaterally to amend or modify the form to satisfy any applicable law. However, the owner shall be permitted to refuse any such change unless noncompliance would cause the contract to be null and void or fail to comply with New Jersey or Federal law." Although the Amendment Clause does not exactly mirror N.J.A.C. 11:4-43.3(f), it appears it is derived from this provision. Moreover, as more fully discussed below, the annuity at issue had to be filed with the Insurance Commissioner prior to being issued in New Jersey. N.J.A.C. 11:4-43.3(a).

419 N.J. Super. at 233. Moreover, we view the Amendment Clause as a general provision when compared to the explicit and specific irrevocability provisions of the contract. Accordingly, the Irrevocability Clause controls the general, undefined Amendment Clause. See Gil, 450 N.J. Super. at 378. Lastly, the Amendment Clause contains permissive language, namely, the president "may" make changes, and certainly does not confer any rights on the annuitant to change the irrevocable nature of the contract.

Our analysis is further buttressed by reference to the DOBI regulations concerning annuities. N.J.A.C. 11:4-40.3(b) provides no annuity contract in New Jersey "shall contain provisions which are unjust, unfair, inequitable, misleading or contrary to law or to the public policy of this State." Moreover, N.J.A.C. 11:4-40.5(a) states: "No insurer shall . . . issue . . . in this State any form unless the form has been approved by the Commissioner pursuant to the procedures set forth in this subchapter . . . ." There is no indication DOBI did not approve this annuity contract. DMAHS's argument is essentially the contract—which DOBI approved—is misleading and its irrevocability clauses should be disregarded. DMAHS's contentions are unavailing. In fact, DMAHS's interpretation would render the contract "misleading" contrary to N.J.A.C. 11:4-40.3.

13

C.L. should not be prejudiced because the CFUA on a prior occasion amended an annuity to correct a miscalculation. C.L. never attempted to revoke her annuity, and there is no indication she could have done so in any event, given the language of the contract. There is simply no indication C.L. could unilaterally liquidate the annuity. Accordingly, we determine the CFUA annuity contract is irrevocable for the purposes of qualifying for Medicaid Benefits and should not be considered as a resource for C.L.[9]

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] Because we have reversed DMAHS's FAD, we do not reach C.L.'s argument DMAHS violated the federal injunction by finding the annuity contract is revocable and her argument DMAHS violated the standards for rulemaking.