**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0198-23

IN THE MATTER OF
ADOPTION OF
AMENDMENT TO THE
NORTHEAST WATER
QUALITY MANAGEMENT
PLAN.

_____

Submitted February 12, 2025 – Decided July 7, 2025

Before Judges Sumners and Bergman.

On appeal from the New Jersey Department of Environmental Protection, Docket No. PI 435442, WMP170001.

Connell Foley LLP, attorneys for appellant Bi-County Development Corporation (Kevin J. Coakley, of counsel and on the briefs; Herschel P. Rose, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Department of Environmental Protection (Donna Arons, Assistant Attorney General, of counsel; Kristen D. Heinzerling, Deputy Attorney General, on the brief).

PER CURIAM

This appeal requires us to determine whether to uphold the New Jersey Department of Environmental Protection's final agency decision enacting a 2023 amendment to the Northeast Water Quality Management Plan (2023 WQMP Amendment),[1] regarding the sewer service area to an Oakland Borough (Borough) property (the Property) in the Highlands Region, Highlands Preservation Area, owned by appellant Bi-County Development Corporation. The 2023 WQMP Amendment would significantly reduce Bi-County's plans to develop a 204-unit affordable housing project (the Project) on the Property. Bi-County argues the 2023 WQMP Amendment should be invalidated because: (1) the Department's action was arbitrary and capricious because it violated its own regulation, N.J.A.C. 7:15-4.4, which exempts Bi-County's property in the Highlands Region from its restrictions; (2) the 2023 WQMP Amendment violates a 2014 settlement agreement between Bi-County and the Department regarding the sewer service for the Project; and (3) the Department's action was not supported by sufficient credible evidence in the record. In the alternative, Bi-County seeks a hearing because the Department's action was adjudicatory

---

[1] The parties interchangeably refer to the Northeast Water Quality Management Plan as the Water Management Plan or WMP. For clarity, unless otherwise indicated, we use only the term WQMP as an acronym for the Northeast Water Quality Management Plan.

and Bi-County's hearing request was improperly denied. We reverse and invalidate the 2023 WQMP Amendment because it violates the parties' settlement agreement. We remand to the Department to revise the 2023 WQMP Amendment to include the entirety of the Property in the sewer service area.

I.

The Property is comprised of approximately 86 acres in the Highlands Region, thus making it subject to the Highlands Water Protection and Planning Act, N.J.S.A. 13:20-1 (the Highlands Act). The Department has designated the Property as having "exceptional resource value" because it is a habitat of the threatened Barred Owl species and contains wetlands. See N.J.A.C. 7:25-4.17. The Property has been the subject of an exhaustive history of disputes, legislative action, litigation, and settlements of which the parties are familiar and need not be rehashed here. For the sake of brevity, we limit our discussion to the history essential to resolve this appeal.

Following a Mt. Laurel[2] lawsuit between Bi-County, the Borough's Planning Board, and the Borough regarding the Borough's affordable housing obligations, the parties reached a settlement in 1991 (the 1991 Settlement Agreement). In pertinent part, the 1991 Settlement Agreement required the

_____

[2] S. Burlington Cnty. NAACP v. Twp. of Mount Laurel, 67 N.J. 151 (1975).

A-0198-23

Borough to diligently resolve future issues related to sewer services affecting the Property, stating:

> The Borough agrees to the aforementioned proposals and that it will diligently and actively but in no event later than thirty (30) days after notice by Bi-County take whatever reasonable steps are necessary as requested by Bi-County, [the Department], the Township of Wayne or any other governmental agency that has jurisdiction or is a party to any agreement or arrangement in effectuating the provision of sewerage collection and treatment for the development contemplated in this Agreement.

The agreement also provided:

> No party to this action shall amend, or seek to sever (judicially or otherwise) or otherwise change any of the terms and conditions of this Agreement, nor shall any land use ordinance affecting the Bi-County tract be amended without the written consent of the parties.
>
> [(Emphasis added).]

The Department subsequently adopted the Borough's WQMP (1991 WQMP), which included the Property in the sewer service area. See 23 N.J.R. 910(b). Notably, "the Borough determined that [a sewer] treatment plant was not feasible and it was never built."[3]

---

[3] In 1998, Bi-County contracted to sell the Property to Pinnacle Communities, LTD. The parties terminated the contract in 2009, returning the Property to Bi-County. To avoid confusion, we do not detail actions taken by Pinnacle because its actions would affect decisions Bi-County took after it re-acquired ownership.

A-0198-23

In 2004, the Department reclassified the wetlands adjacent to the Property as having "exceptional resource value" and placed further restrictions on the Project's transition area. Consequently, the 313-housing unit proposal for the Project was reduced to 209 units and modified site plans were submitted to the Planning Board. That same year, the Highlands Act was passed authorizing the Highlands Water Protection and Planning Council to supervise developments in the Highlands Region. N.J.S.A. 13:20-1. The Highlands Act also exempts certain developments from its provisions, such as those subject to a settlement agreement, contingent on time restrictions. N.J.S.A. 13:20-28(a)(17).

In 2005, the Department determined Bi-County was exempt from the Highlands Act due to the 1991 Settlement Agreement. That aside, the Department noted, "[t]his determination does not eliminate the need for any permits, approvals, or certifications required by the Department or any [f]ederal, [s]tate, county or municipal review agency with jurisdiction over this project/activity." The Department also determined the Project was inconsistent with the 1991 WQMP, because it "is located outside of the sewer service area . . . in Wayne Township, which is the proposed recipient of the sewage."

Over the next several years, Bi-County and the Department engaged in extensive litigation before the Office of Administrative Law regarding the

5

Property's access to sewer service in accordance with the 1991 WQMP. The litigation culminated in the 2014 Settlement Agreement which resolved that: (1) the 1991 WQMP remained in effect, and the Department erred by initially finding the proposal inconsistent with the 1991 WQMP; and (2) Bi-County's exempt status under the Highlands Act had not yet expired.

In response to its pending permits, Bi-County submitted a revised plan reducing the Project's housing units to 204. Bi-County was granted two general permits and a transition area waiver and agreed to revise its development plan and comprehensive conservation plan to confirm to the permitting plan. The Department agreed it would "recognize that the Project is consistent with the [1991] WQMP," and not adopt the 1991 WQMP amendments affecting the Project.

In addition, the 2014 Settlement Agreement, in pertinent part, states:

> 4. For so long as the Project remains exempt under the Highlands Act, the Department shall not adopt a WQMP amendment that does not provide sufficient [sewer service area] to serve the Project.
>
>    . . . .
>
> 6. . . . The Department shall promptly review the revised Wetlands Application, based on the findings in this Settlement Agreement that the revised Project will satisfy all regulatory requirements for issuance of the required permits and that due to the Comprehensive

6

Conservation Plan, the presence of documented barred owl habitat and Exceptional Resource Value wetlands on the Property shall not preclude the approval of the permit applications.

Moreover, the agreement reflected that the Project is exempt from the Highlands Act, N.J.S.A. 13:20-28(a)(17), because no final approval had yet been rendered.

On June 14, 2023, Bi-County's plans for the project faced another hurdle when the Department adopted the 2023 WQMP Amendment based on the Borough's proposal, which superseded the 1991 WQMP. See 55 N.J.R. 1750(a). Consequently, approximately 40 percent of the Property was removed from the SSA, reducing coverage from 86 acres to 50.6 acres. On July 31, Bi-County filed an adjudicatory hearing request with the Department. The request was denied about a month later. This appeal followed.

II.

The scope of our review of an agency decision is limited. In re Taylor, 158 N.J. 644, 655 (1999). "An appellate court ordinarily will reverse the decision of an administrative agency only when the agency's decision is 'arbitrary, capricious or unreasonable or . . . is not supported by substantial credible evidence in the record as a whole.'" Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23 (App. Div. 2005) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). "'Substantial evidence' means 'such evidence as a

reasonable mind might accept as adequate to support a conclusion.'" Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

Reviewing courts do not substitute their analysis of the facts with the agency's, given courts are to respect and defer to an agency's "expertise and superior knowledge of a particular field." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992). To further illustrate, "[e]ven if a court may have reached a different result had it been the initial decision maker, it may not simply 'substitute its own judgement for the agency's.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting In re Carter, 191 N.J. 474, 483 (2007)).

Notwithstanding, courts are prohibited from "perfunctorily review[ing] and rubber stamp[ing] the agency's decision." Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 203 (App. Div. 2003). Courts review an agency's legal conclusions de novo. Lavezzi v. State, 219 N.J. 163, 172 (2014). Further, an agency's action is arbitrary and capricious if the reviewing court determines that the agency made a "willful and unreasoning action, without consideration and in disregard of [the] circumstances." Bayshore Sewerage Co. v. Dep't of Env't. Prot., 122 N.J. Super. 184, 199 (App. Div. 1973). That said, "[w]here there is

room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." Ibid.

Whereas courts review strictly legal questions "on equal footing" with that of an administrative determination, Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020), they nonetheless "defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is plainly unreasonable," E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022) (internal citations and quotations omitted). "This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." Ibid. (internal citation omitted). As such, courts review decisions "made by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard." Ibid.

In applying the "plainly unreasonable" standard, courts first evaluate "the words of the statute, affording to those words 'their ordinary and commonsense meaning.'" In re Eastwick College LPN-to RN Bridge Program, 225 N.J. 533, 542 (2016) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-

2008, 201 N.J. 254, 263 (2010)). If the plain language allows for more than one reasonable interpretation, a court may consider extrinsic evidence, such as "the long-standing meaning ascribed to the language by the agency charged with its enforcement." Bedford v. Riello, 195 N.J. 210, 222 (2008). Ultimately, the court's task is to "construe the regulation as written." US Bank, N.A. v. Hough, 210 N.J. 187, 199 (2012). The challenger of the agency's decision has the burden of proof. Parsells v. Bd. of Educ. of Borough of Somerville, 472 N.J. Super. 369, 376 (App. Div. 2022).

## A.

We are convinced by Bi-County that the 2023 WQMP Amendment violates the 2014 Settlement Agreement. The Department rejected that argument deciding that its amendment "complies with the 2014 Settlement Agreement between [the Department] and Bi-County as it ensures sufficient sewer service area to serve the Project." Given that determining the scope of a settlement agreement constitutes contract interpretation, Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), our review of the Department's decision on the impact of the 2014 Settlement Agreement is without deference and is de novo, C.L. v. Div. of Med. Ass'n & Health Servs., 473 N.J. Super. 591, 598 (App. Div. 2022).

The 2014 Settlement Agreement provides: "For so long as the Project remains exempt under the Highlands Act, the Department shall not adopt a WQMP amendment that does not provide sufficient [sewer service area] to serve the Project." It also impliedly and expressly accounted for Project changes, noting:

> 9. [Bi-County] must obtain any other approvals required by local, state, or federal law.
>
> 10. [Bi-County] shall notify the Department of any proposed change to the development on the Property and shall apply for any necessary permits or authorizations from the Department.

The parties agree that the Project remains exempt under the Highlands Act as it has not yet received final approval for development from the respective municipalities and agencies. The promulgation of the 2023 WQMP Amendment was premature because it was enacted before the Project's site plans were finalized. Absent final approval, the Department agreed not to adopt a WQMP amendment that does not "serve the Project." Because the 2014 Settlement Agreement terms were "clear and unambiguous, there is no room for construction and [we] must enforce those terms as written," giving them "their plain, ordinary meaning." C.L., 473 N.J. Super. at 599 (quoting Watson v. City of E. Orange, 175 N.J. 442, 447 (2003) (Long J., dissenting)). Consequently,

11

the Department's 2023 WQMP Amendment is voided as it violates the clear terms of 2014 Settlement Agreement.

B.

Because we have voided the 2023 WQMP Amendment as it conflicts with the 2014 Settlement Agreement, we need not address Bi-County's other arguments. However, we do so for the sake of completeness.

1.  N.J.A.C. 7:15-4.4

Bi-County argues "the [2023 WQMP] Amendment violates the legislative direction set forth in N.J.A.C. 7:15-4.4 for delineation of sewer service areas." The regulation governs the delineation of sewer service areas and, in pertinent part, provides:

> (a) <u>Areas</u> eligible for sewer service shall be determined in accordance with the provisions of this section.
>
> . . . .
>
> (c) In the Highlands Region, <u>areas</u> eligible for sewer service are delineated as follows:
>
> 1. In the Highlands preservation <u>area</u>, those <u>areas</u> that were connected to a wastewater treatment facility as of August 10, 2004, or those areas that are eligible for sewer service pursuant to N.J.A.C. 7:38-2.3, 2.4, 2.6, and 3.4;
>
> . . . .

(d) Except for <u>areas</u> identified in (b) and (c)1 and 2 above, <u>areas</u> shall only be eligible for sewer service area delineation if they are not identified as environmentally sensitive areas at (e) below . . . .

[N.J.A.C. 7:15-4.4 (a), (c)(1), (d) (emphasis added).]

Since the Property is located in the Highlands Preservation Area it is exempt under the Highlands Act because it was the subject of a <u>Mt. Laurel</u> builder's remedy settlement. Under N.J.A.C. 7:15-4.4(c)(1), such exempt properties are not subject to the prohibition on delineating sewer service areas in environmentally sensitive areas. Bi-County contends the Department's reason for reducing the sewer service area—relying on the general restriction against sewer service in environmentally sensitive areas—does not apply because the Property is specifically exempted under N.J.A.C. 7:15-4.4(c)(1). The Department, according to Bi-County, failed to acknowledge that N.J.A.C. 7:15-4.4 explicitly allows for sewer service areas on exempt parcels, and its continued reliance on environmental sensitivity as a justification to reduce its sewer service area from 86 acres to 50.6 acres conflicts with the intent and explicit wording of the regulation.

Bi-County also stresses that the Property is exempt from the Highlands

Act under N.J.A.C. 7:38-2.3.[4] The regulation provides:

> A major Highlands <u>development</u> located within an area designated as Planning Area 1 (Metropolitan), or Planning Area 2 (Suburban) as designated pursuant to the State Planning Act, N.J.S.A. 52:18A–196 et seq., as of March 29, 2004, that on or before March 29, 2004 has been the subject of a settlement agreement and stipulation of dismissal filed in the Superior Court, or a builder's remedy issued by the Superior Court, to satisfy the constitutional requirement to provide for the fulfillment of the fair share obligation of the municipality in which the development is located. This exemption shall expire if construction beyond site preparation does not commence within three years after receiving all final approvals required pursuant to the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq.
>
> [N.J.A.C. 7:38-2.3(a)(17) (emphasis added); <u>see also</u> N.J.S.A. 13:20-28(a)(17).]

Before addressing the merits of Bi-County's contentions relying upon

N.J.A.C. 7:15-4.4 and N.J.A.C. 7:38-2.3, we must first determine whether these

arguments should be considered because they were not previously raised before

the Department. It is well-settled that we will "not consider issues not raised

---

[4] N.J.A.C. 7:15-4.4C(1) references N.J.A.C. 7:38-2.3 as "those areas that are eligible for sewer service pursuant to N.J.A.C. 7:38-2.3." Thus, N.J.A.C. 7:38-2.3 is referenced in N.J.A.C. 7:15-4.4C(1) and just specifies an exception contained therein.

14

below at an administrative hearing" unless they are of "public importance and will likely arise in the future." In re Stream Encroachment Permit, Permit No. 0200-04-002.1 FHA, 402 N.J. Super. 587, 602 (App. Div. 2008); see also Bergen Pines Cnty. Hosp. v. N.J. Dept. of Hum. Servs., 96 N.J. 456, 474 (1984). Bi-County argues that despite not specifically contending to the Department that the 2023 WQMP Amendment violated N.J.A.C. 7:15-4.4(c)(1), its public comment to the agency—noting that the Property was exempt from the Highlands Act and the exemption was a key factor to maintaining sewer service area coverage in the 2014 Settlement Agreement—"did not deprive the Department of any opportunity to make its case."

We agree with the Department that Bi-County did not present its N.J.A.C. 7:15-4.4(c)(1) contention to the Department in its public comment before the 2023 WQMP Amendment was issued. The Department responded to Bi-County's public comment stating:

> The reduction of [sewer service areas] in this W[Q]MP addresses protection of [environmentally sensitive areas] pursuant to the WQMP rule, N.J.A.C. 7:15-4.4, and is in compliance with the 2014 Settlement Agreement by providing sufficient sewer service to serve the Project for so long as the Project remains exempt under the Highland Act.
>
> . . . .

The WQMP rule, at N.J.A.C. 7:15-4.4, outlines how areas eligible for sewer service shall be determined and are applied when a W[Q]MP is updated. Environmentally sensitive areas are included as one of the determining factors. . . . The areas of the Property excluded in the [sewer service areas] in this 2022 W[Q]MP consist entirely of threatened and endangered species habitat conservation areas as identified in the 2006 Comprehensive Conservation Plan and the 2012 Permitting Plan incorporated into the 2014 Settlement Agreement, or identified as wetlands on the most recent Letter of Interpretation for the Property.

[(Emphasis added).]

Because Bi-County failed to argue the 2023 WQMP Amendment violated N.J.A.C. 7:15-4.4, the Department instead focused on Bi-County's argument that the 2023 WQMP Amendment conflicted with the 2014 Settlement Agreement.

In addition, contrary to Bi-County's contention, the Department's failure to address whether N.J.A.C. 7:15-4.4 was violated was not plain error because it was not "clearly capable of producing an unjust result," and should not be decided "in the interests of justice." R. 2:10-2; see also Thompson v. Bd. of Trs., Tchrs.' Pension and Annuity Fund, 449 N.J. Super. 478, 500 (App. Div. 2017) discussing the plain error standard in the context of administrative agency action). The issue need not be addressed because, as noted, we conclude the 2023 WQMP Amendment is void as it violates the 2014 Settlement Agreement.

Even had we not reached that conclusion, we determine Bi-County has not shown a factual basis supporting their plain error argument.

Putting aside Bi-County's procedural deficiency, the argument fails on its merits because Bi-County does not establish the 2023 WQMP Amendment violates N.J.A.C. 7:15-4.4. Reiterating the premise that we must defer to the Department's interpretation of the statute and regulation unless it is unreasonable, we discern no reason to disagree with the Department's interpretation of N.J.A.C. 7:15-4.4. The Department determined that the exemption for sewer service areas under N.J.A.C. 7:15-4.4 is limited to "the 'development,' or 'project' or 'area,' and not an entire property." This was since the overarching exemption, wherein N.J.A.C. 7:38-2.3(a) explicitly provides that the "following projects or activities are exempt from the requirements of this chapter, but are required to comply with all other Federal, state and local requirements that may apply to the proposed project." (Emphasis added).

Bi-County's contention that N.J.A.C. 7:38-2.3(a)(17)'s reference to "[a] major Highlands development" shows that the Property is exempt is unpersuasive. (Emphasis added). This language does not clarify the scope of the exemption. Contrary to Bi-County's contention, it does not suggest that a Highlands development encompasses the entire Property but rather suggests that

the Department's reading of its regulation was reasonable given the several references to a "project" or "activity" being exempt. As such, Bi-County failed to demonstrate how the Department's construction of its regulation was plainly unreasonable.

### 2. Hearing Request

Bi-County contends the Department's rejection of its request for a third-party hearing qualifies as "adjudicatory action." Citing to the parties' long-standing dispute concerning the WQMP Amendments since 2017, Bi-County declares a third-party hearing would clarify the Department's decision-making in promulgating the WQMP Amendment, which is necessary for appellate review to consider sewer service area reduction from 86 acres to 50.6 acres. Bi-County contends our conclusion in Toll Bros., Inc. v. State, Dep't of Env't Prot., 242 N.J. Super. 519, 527 (App. Div. 1990), that "the adoption of areawide [WQMP] plans and amendments . . . constitutes quasi-legislative rule-making" does not apply here. It argues that after Toll Bros, the Department adopted N.J.A.C. 7:15-3.9, which allows challengers of regional WQMPs to request an adjudicatory hearing. Bi-County claims the Department's consideration of the facts and allocation of the sewer service area—based on its interpretation of the

2014 Settlement Agreement—constitutes a "quasi-judicial decision" entitling it to a hearing.

Bi-County did not have a right to a hearing before the Department. In Toll Bros., we specifically held "that the adoption of areawide [WQMP] and amendments thereto constitutes quasi-legislative rule-making." 242 N.J. Super. at 527. Our Supreme Court's subsequent decisions were consistent with that holding. In Northwest Covenant Medical Center v. Fishman, the Court made clear that quasi-legislative matters occur when:

> [I]t appears that the agency determination . . . (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter, and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy.
>
> [167 N.J. 123, 135-36 (2001) (quoting Metromedia, Inc. v. Dir., Div. of Tax'n, 97 N.J. 313, 331-32 (1984).]

19

In In re Proposed Quest Academy Charter School of Montclair Founders Group, the Court reiterated that a party is not always entitled to a formal adjudicatory hearing for quasi-legislative agency actions. 216 N.J. 370, 384 (2013). And it's well settled that for appellate review of quasi-legislative agency actions, the arbitrary and capricious "standard does demand that the reasons for the decision be discernible, [but they] need not be as detailed or formalized as an agency adjudication of disputed facts." In re Grant of Charter Sch. Application of Englewood on Palisades Charter Sch., 320 N.J. Super. 174, 217 (App. Div. 1999).

Like the situation in Toll Bros., the 2023 WQMP Amendment is clearly quasi-legislative because it governs a large area, the Highlands Region, which extends to the public at large—and has a general and uniform application to similarly situated people. See Tolls Bros., 242 N.J. Super. at 527-28; see also Northwest Covenant Med. Ctr., 167 N.J. at 135-36. Besides Bi-County's assertion that a more developed record is needed, it makes no contention that the Department's adoption of the WQMP Amendment constitutes quasi-judicial action, requiring a more formal proceeding. Even then, we see no need to exercise our discretion to refer the matter to the Law Division or to the agency for "additional fact-finding" to reach "a just outcome." Strategic Env't Partners,

LLC v. N.J. Dep't of Env't Prot., 438 N.J. Super. 125, 138 (App. Div. 2014) (quoting Infinity Broad. Corp. v. N.J. Meadowlands Comm'n, 187 N.J. 212, 227 (2006)).

Moreover, Bi-County's reliance on N.J.A.C. 7:15-3.9 is misplaced because the provision no longer exists as of 2016. See 47 N.J.R. 2531(a); see also 48 N.J.R. 2244(a). Indeed, N.J.A.C. 7:15-3.6 now reads, "[a] Department decision on an amendment or revision to an areawide [WQMP] is a final agency action, and any appeal of that decision shall be taken to the Superior Court, Appellate Division pursuant to the New Jersey Court Rules." Bi-County's appeal here is consistent with N.J.A.C. 7:15-3.6.

Reversed and remanded to the Department to revise the 2023 WQMP Amendment to include the entirety of the Property in the sewer service area. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0198-23